32 A.3d 155

HEAVENLY DAYS CREMATORIUM, LLC

v.

HARRIS, SMARIGA AND ASSOCIATES, INC.

No. 1453, Sept. Term, 2010.

Court of Special Appeals of Maryland.

Dec. 1, 2011.

Dale A. Cooter (Cooter, Mandgold, Deckelbaum & Karas, LLP, on the brief), Washington, DC, for Appellant.

James F. Lee, Jr. (Arthur T.K. Norris, Lee & McShane, PC, on the brief), Washington, DC, for Appellee.

Panel: DEBORAH S. EYLER, MATRICCIANI, and ALAN M. WILNER, (Retired, Specially Assigned), JJ.

MATRICCIANI, J.

On October 29, 2009 appellant, Heavenly Days Crematorium, LLC ("Heavenly Days"), filed a complaint against appellee, Harris, Smariga and Associates, Inc. ("HSA"), in the Circuit Court for Frederick County seeking monetary damages for breach of contract and professional negligence. On August 16, 2010, the circuit court entered an order granting HSA's motion to dismiss, without prejudice, for failure to file a certificate of qualified expert under Maryland Code (1973, 2006 Repl.Vol.), Courts and Judicial Proceedings Article ("CJP") section 3–2C–02. Heavenly Days presents one question for our review, which we have edited for clarity: [1]

I. Was the circuit court legally correct in granting HSA's motion to dismiss for failure to file a certificate of qualified expert?

For the reasons set forth below, we answer yes and affirm the judgment of the circuit court.

## FACTS AND PROCEEDINGS

Heavenly Days owns and operates the Greenbriar Kennels Memorial Crematorium ("crematorium"), an animal cemetery and crematorium in Urbana, Maryland. In August of 2004, Heavenly Days applied to move its crematorium—at that time operating in Rockville, Maryland—to its current location in

---

[1]. Heavenly Days presented four additional questions in its brief. We have consolidated those questions into a single issue, as each of them merely presented a separate argument with regard to the circuit court's grant of HSA's motion to dismiss.

Urbana. The application process required Heavenly Days to obtain plan approval, zoning variances, and various building permits from the State of Maryland and Frederick County. Heavenly Days hired HSA, a firm that offers site planning and civil engineering services, to assist Heavenly Days with the permit application and approval process.

From 2004 through 2007, HSA employee Chris Mayo was Heavenly Days's contact person during the application process. Mayo submitted a site plan to the Frederick County Planning Commission ("FCPC") in the fall of 2004, and on January 19, 2005 the FCPC gave the site plan a conditional approval. There were seven conditions attached to the conditional approval, one of which was that construction of the crematorium had to begin within two years to vest the approval. Under the Frederick County Zoning Ordinance ("Zoning Ordinance") site plan applicants may request a one-time six month extension, provided the request is made at least thirty days before the expiration of the two year conditional approval period. Zoning Ordinance § 1–19–3.220.

After the FCPC granted the conditional approval, other Frederick County agencies made comments on the site plan that needed to be addressed before the county would sign off on the site plan. Additionally, Heavenly Days wished to increase the size of the crematorium and HSA had to relocate the crematorium building because it had not accounted for the effect that the exhaust fans would have on dog kennels located outside the building. To address the comments and reflect changes in the site plan, Mayo worked with Heavenly Days and the FCPC to submit a revised site plan.

By the fall of 2006, however, certain issues with the site plan had not yet been resolved. The conditional approval was due to expire on January 19, 2007 unless a request for a six month extension was made by December 19, 2006. Mayo requested a December 15, 2006 meeting with the county to submit a revised site plan and request the six month extension. The county never responded to Mayo's request, however, and the December 19 deadline passed without anyone requesting a six

month extension. On January 5, 2007 Mayo, along with representatives from Heavenly Days and its subcontractors, met with county planners and requested an extension. The county denied this request as untimely. Mayo submitted a revised site plan on January 10, 2007. The county did not approve the revised site plan before the January 19 deadline passed, and thus the original site plan's conditional grant of approval lapsed.

Heavenly Days alleged that Mayo did not use reasonable care in preparing the site plan by failing to: (1) correct errors in Heavenly Days's site plan; (2) satisfy timely the conditions of a conditional approval granted by the county, and; (3) request timely an extension to satisfy such conditions. Heavenly Days contends that Mayo's negligence caused the site plan's deficiencies; that as a result of Mayo's negligence Heavenly Days incurred penalties and fines, suffered construction delays, and had to repeat certain construction tasks; and that Mayo's negligence ultimately forced Heavenly Days to restart the application process.

Heavenly Days filed suit against HSA in the Circuit Court for Frederick County on October 29, 2009, seeking monetary damages for breach of contract and "professional negligence."[2] On January 20, 2010 HSA filed a motion to dismiss for failure to state a claim upon which relief can be granted, arguing that Heavenly Days failed to make out a case for the breach of contract claim, and that Heavenly Days's negligence claim was barred by the economic loss rule. On February 22, 2010 Heavenly Days filed an opposition to HSA's motion to dismiss, and filed therewith an amended complaint. HSA withdrew its initial motion to dismiss, but on March 19, 2010 filed a motion to dismiss Heavenly Days's amended complaint. HSA based this second motion to dismiss on Heavenly Days's failure to file a certificate of qualified expert ("certificate")

---

2. We use "professional negligence" here to reflect the heading in Heavenly Days's amended complaint. Whether the complaint alleged "professional negligence" under the meaning of the applicable statute, or just "ordinary negligence" based on the common law is at issue in this case, and will be discussed *infra* Part II(C).

within ninety days of filing the original complaint as required by CJP § 3–2C–02. Heavenly Days's opposition to HSA's second motion to dismiss included as an exhibit a certificate identifying Thomas Lane as an expert qualified to testify on the standards of practice as a property line surveyor.

In an August 12, 2010 motions hearing, Heavenly Days asked the circuit court to exercise its discretion under CJP § 3–2C–02(c) to waive or modify the certificate requirement and extend the ninety-day deadline for filing the certificate. HSA argued that Heavenly Days had not made a timely showing of good cause to waive or modify the certificate requirement, and therefore the circuit court did not have discretion to do so. On August 16, 2010 the Circuit Court for Frederick County entered an order granting HSA's motion to dismiss without prejudice. Heavenly Days filed timely notice of appeal to this Court on August 24, 2010.

## DISCUSSION

### I. Standard of Review

In *Kearney v. Berger* we reviewed the trial court's grant of the defendant's motion to dismiss a medical malpractice claim for failure to file a certificate under § 3–2A–04(b)(4). 182 Md.App. 186, 957 A.2d 682 (2008). We noted:

> In reviewing a trial court's grant of a motion to dismiss, the truth of all well-plead relevant and material facts is assumed, as well as all inferences which can be reasonably drawn from the pleadings. Dismissal at the trial court level will only be proper if, after assuming the allegations and permissible inferences flowing therefrom are true, the plaintiff would not be afforded relief. (internal quotation and citations omitted).

*Id.* at 190–91, 957 A.2d 682. Accordingly, the following discussions assumes the truth of the facts as set forth in the Heavenly Days's amended complaint and HSA's motion to dismiss the amended complaint.

## II. Malpractice Claims Against Licensed Professionals

### A. *Statutory Definitions*

Courts and Judicial Proceedings Article § 3–2C–01(b) defines a "claim" as

a civil action, including an original claim, counterclaim, cross-claim, or third-party claim, originally filed in a circuit court or United States District Court against a licensed professional or the employer, partnership, or other entity through which the licensed professional performed professional services that is based on the licensed professional's alleged negligent act or omission in rendering professional services, within the scope of the professional's license, permit, or certificate, for others.

Courts and Judicial Proceedings Article § 3–2C–01(c) enumerates five categories of "licensed professionals" based on certifications or licenses under Maryland Code (1997, 2010 Repl. Vol.), Business Occupations and Professions Article ("BOP"). For our purposes here, a "licensed professional" means a professional engineer licensed under BOP title 14.

A professional engineer is "unless context requires otherwise, an engineer who is licensed by the [State Board for Professional Engineers] to practice engineering." BOP § 14–101(g). Business Occupations and Professions Article § 14–101(f)(1) defines "practice engineering" as providing "any service or creative work the performance of which requires education, training, and experience in the application of special knowledge of the mathematical, physical, and engineering sciences and the principles and methods of engineering analysis and design. "Practice engineering" also includes consultation, design, evaluation, investigation, and design coordination in regard to a building or other structure. BOP § 14–101(f)(2).[3]

---

**3.** Section 14–101(f)(3) also excludes from the phrase "practice engineering" "the exclusive and sole performance of nontechnical management activities." As discussed below in Part II(B), Mayo's work on the crematorium does not fall within this exclusion.

Neither party disputes that Mayo does not hold a license to practice engineering issued by the State Board for Professional Engineers.[4] As BOP § 14–101(g) indicates, however, in certain contexts a non-licensed individual may be considered a "professional engineer." Under BOP § 14–303(a)(1), a non-licensed individual who is the employee or subordinate of a professional engineer may practice engineering without a license.

Lastly, CJP § 3–2C–01(d) defines a "qualified expert" as "an individual who is a licensed professional, or comparably licensed or certified professional under the laws of another jurisdiction, knowledgeable in the accepted standard of care in the same discipline as the licensed professional against whom a claim is filed."

For suits under CJP § 3–2C–02 the claimant must file a certificate of a qualified expert with the court. A valid certificate must "[c]ontain a statement from a qualified expert attesting that the licensed professional failed to meet an applicable standard of professional care." CJP § 3–2C–02(a)(2)(i). Failure to file the certificate within ninety days after filing the complaint entitles the defendant to dismissal without prejudice. *Id.* § (a)(1). Upon a showing of good cause by the claimant, the court has discretion to waive or modify the filing requirement. *Id.* § (c)(1).

Heavenly Days contends that CJP § 3–2C–02 applies only to allegations against an individual licensed professional, and that its complaint is against a corporation, HSA, based on the negligence of Chris Mayo, who is not a licensed professional under the statute. HSA counters that the General Assembly amended CJP § 3–2C–02 in 2005 to require a certificate under

---

**4.** Exhibit 'B' of Heavenly Days's opposition to HSA's motion to dismiss the amended complaint is a copy of Mayo's LinkedIn profile, which lists her as having received a Masters Degree in Landscape Architecture from the North Carolina State University in 1981. Under CJP § 3–2C–01(c)(3), a licensed landscape architect is a "licensed professional." The record contains no evidence that Mayo is a licensed landscape architect, however, so she does not qualify as a "licensed professional" based on her educational background alone.

circumstances such as these, and thus the fact that Mayo did not have a license is inconsequential. The circuit court held that "there's no doubt in my mind that the statute was triggered, and that there is a need for a certificate to be filed, timely filed[.]"

Where an order of the trial court involves an interpretation and application of Maryland statutory law, the reviewing court "must determine whether the trial court's conclusions are 'legally correct' under a *de novo* standard of review." *Schisler v. State*, 394 Md. 519, 535, 907 A.2d 175 (2006). To make this determination, we must examine the definitions of the terms "licensed professional," "claim," and "professional negligence" under CJP § 3–2C–01. "The cardinal rule of statutory construction is to ascertain and effectuate the intent of the Legislature." *Chow v. State*, 393 Md. 431, 443, 903 A.2d 388 (2006) (internal citations omitted). "If the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written." *Jones v. State*, 336 Md. 255, 261, 647 A.2d 1204 (1994). If the language of the statute is ambiguous, however, we consider "not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives and purpose of [the] enactment" under consideration. *Fraternal Order of Police v. Mehrling*, 343 Md. 155, 174, 680 A.2d 1052 (1996) (internal quotations and citations omitted). An ambiguity exists within a statute when there exists "two or more reasonable alternative interpretations of the statute." *Chow*, 393 Md. at 444, 903 A.2d 388.

### B. *"Claim" Against a "Licensed Professional"*

In its amended complaint, Heavenly Days alleged that HSA agreed to provide planning and civil engineering services in connection with its application for approval of the crematorium. Specifically, Heavenly Days engaged HSA to prepare a site plan for the crematorium and submit it to Frederick County. To determine whether HSA's complaint is a "claim"

within the meaning of CJP § 3–2C–01(b), we look to the nature of the underlying services.

The requirements for site plans and the process by which the county approves them are set forth in the Zoning Ordinance §§ 1–19–3.300.1 through 1–19–3.300.4.[5] Site plans must

---

5. Section 1–19–3.300.3 of the Zoning Ordinance sets forth the following requirements for a site plan application:

> An application submitted for site plan review shall include the following information:
> (A) A map of the subject property at a convenient scale;
> (B) A vicinity map at a scale of 1 inch equals 2,000 feet or more to the inch, indicating the location of the property with respect to surrounding property and streets. The map will show all streets and highways within 2,000 feet of the applicant's property;
> (C) A topographic map of the property, at a minimum of 5 foot contour intervals, unless otherwise specified, showing the existing and proposed regrading surface of the land and the location of natural features, such as streams, rock outcrops, and wooded areas;
> (D) In accordance with the Division of Permitting and Development Review checklist requirements a site development plan showing all existing and proposed improvements including but not limited to: proposed use; location and height of all buildings; location of existing and proposed rights-of-way; location and dimensions of all parking areas, drive aisles, and truck loading areas with access and egress drives thereto; location of sidewalks, pedestrian crossings, and existing or planned transit stops; location and type of any outdoor storage; location and type of any recreation facilities; proposed grading, landscaping, and screening plans; description of proposed method to provide buffer areas and landscaping where required; location, design and height of outdoor lighting facilities; building elevation for the purpose of depicting the location, size, and type of all signs; and the location, size and type of all proposed storm water management facilities;
> (E) A computation of the total areas of the lot, including the building floor area, building floor area for each type of proposed use, the roads and parking, green area, landscaped and screened areas, recreation areas as required, and total lot coverage;
> (F) Commercial or industrial uses will designate:
> (1) The specific uses proposed and the number of employees for which buildings are designed;
> (2) The type of power to be used for any manufacturing processes;
> (3) Type of wastes or by-products to be produced by any process and proposed method of disposal of such wastes or by-products; and
> (4) Such other information as may be required by the Planning Commission or its authorized representatives to determine compliance with the requirements with this chapter and the impact of a particular use on adjoining properties;

contain topographical maps, surveying benchmarks, right of way locations, area computations, soil analysis, and other engineering data. Zoning Ordinance § 1–19–3.300.3. Under the Zoning Ordinance, the county's approval of a site plan accounts for stormwater management considerations. Zoning Ordinance § 1–19–3.300.1. The site plan prepared by HSA included stormwater management calculations prepared, signed, and sealed by a licensed professional engineer, HSA employee T. Merchant McDonald. Thus, HSA's preparation of the site plan falls within the phrase "practice engineering" under BOP § 14–101(f)(1).

Heavenly Days contends that the only employee of HSA with whom it had contact is Mayo, but the record indicates that other HSA employees—at least one of whom, McDonald, was a licensed professional engineer—contributed to the crematorium site plan application. Though Heavenly Days focus-

---

(G) (1) Soil type(s) information shall be provided and appropriate boundaries shown. In the event "wet soils" are located on or within 100 feet of any proposed residential site plan, a soils delineation report shall be prepared by a soils scientist or professional engineer registered in the State of Maryland. The Planning Commission may waive this requirement if the "wet soils" are located within open space areas. The soils report shall be submitted for review by SCD prior to approval of the site plan by the Planning Commission or its authorized representatives unless a soils report was completed earlier within the development review process.

(2) If residential structure(s) with basements are proposed within "wet soil" a geotechnical report is required to be submitted by a professional engineer registered in the State of Maryland. A note shall be placed on the site plan that all construction shall be in accordance with the findings of the geotechnical report.

(3) Site plans may be prepared and submitted by an applicant. *The submitted information, if found deficient or in error, may be required to be resubmitted over the certification of an engineer, architect, landscape architect, land surveyor or other certified professional.* Site plans will be prepared to a scale of not smaller than 1 inch equals 100 feet, unless approved by the Division of Permitting and Development Review; the sheet or sheets shall be no less than 18 inches by 20 inches nor more than 24 inches by 36 inches, including a 1–1/2 inch margin for binding along the left edge. A site plan may be prepared on one or more sheets, in which case, match lines and an index sheet shall be provided.

(emphasis added).

es on a few specific actions or inactions by Mayo, the scope of work was more comprehensive and involved other HSA employees. HSA contends that Mayo performed planning and engineering services by virtue of her position with HSA, and that McDonald was the licensed professional engineer handling and overseeing the engineering services on the crematorium project. Indeed, McDonald's seal appears on the stormwater management documents. The site plan itself is not sealed, presumably because under the Zoning Ordinance, site plans themselves may be submitted by applicants who are not professional engineers. Zoning Ordinance § 1–19–3.300.3(G)(3). But the record makes clear that Mayo was more than a mere courier who transported the site plan to the county offices.

In the fall of 2005 Mayo submitted the site plan to the FCPC. The FCPC granted the site plan a conditional approval on January 19, 2005. This site plan accurately depicted the crematorium building as 40′ X 80′, but contained an inaccurate written comment describing the building as 40′ X 30′. Heavenly Days later desired to change the size of the building to 40′ X 100′. Heavenly Days asked Mayo to get approval from the FCPC for the change and to correct the written comment on the site plan. In addition to coordinating these changes with the county, this task would have required substantive revisions to the site plan in the form of recalculated building areas for the crematorium and new comments on the site plan. Zoning Ordinance § 1–19–3.300.3. Such revisions invoke the definition of "practice engineering" under BOP § 14–101(f), specifically design coordination in regard to a building under BOP § 14–101(f)(2)(vii).

Mayo submitted a revised site plan purporting to address these changes, but the revised site plan did not correct the original written mistake describing the building as 40′ X 30′ and also did not show a building 40′ X 100′ in size, as requested. In alleging that Mayo failed to correct the mistakes in the revised site plan, Heavenly Days attacks the professional engineering services that HSA provided. Here, Heavenly Days attempts to separate the underlying act—the

preparation of a site plan completed in part by HSA engineer T. Merchant McDonald, P.E.—from a subsequent failure by HSA employee Chris Mayo to submit timely a properly-revised site plan. This does not change the fact that the alleged breach was of a professional standard of care in providing engineering services.[6]

Heavenly Days claimed there was another issue with the site plan Mayo submitted, and alleged in its amended complaint that "*HSA* had failed to take into account the number of exhaust fans that would be required to keep the machines working and by locating the crematorium up against the retaining wall the fans would blow directly on the outside runs for the dogs." (emphasis added). Calculating the number of exhaust fans required to properly ventilate a building is a quintessential mechanical engineering task. *See* Kutz & Myer, *Mechanical Engineer's Handbook* § 55.5 (2nd ed. 1998), Eugene A. Avallone & Theodore Baumeister, *Marks' Standard Handbook for Mechanical Engineers* § 14.5 (11th ed. 2007). Siting a building at a proper location in light of its use and surrounding circumstances is a quintessential civil engineering task. Nitsure, Pawar, & Kulkarni, *Basic Civil Engineering* 2–2 (2006). By the language of its own amended complaint, Heavenly Days attributes the failure to properly perform these tasks to HSA as a firm of engineers, not to Mayo as an individual without an engineering license. That Mayo was the individual who delivered the engineering documents to the FCPC does not change the fact that the nature of the complaint is HSA's negligent performance of engineering services.

■ As previously noted, CJP § 3–2C–01(b) defines "claim" as "a civil action . . . against a licensed professional or the employer . . . through which the licensed professional performed professional services that is based on the licensed professional's alleged negligent act or omission in rendering

---

**6.** Indeed, Heavenly Days styled its complaint as one for "professional negligence," and it concedes that its claim arises from a contract for professional services negligently performed.

professional services. . . ." The parties offer competing interpretations of this term. Heavenly Days contends that an action against a corporate employer is not a "claim" when the only professional negligence alleged is that of an unlicensed employee. HSA counters that the negligence alleged against HSA was not just that of Mayo, and that under the circumstances "claim" includes an action against a corporate employer providing professional services. To aid in our interpretation of the term, we look to the meaning of "claim" in light of the 2005 amendment and legislative policy advanced thereby. *See Fraternal Order of Police v. Mehrling,* 343 Md. 155, 174, 680 A.2d 1052 (1996).

Prior to 2005, CJP § 3–2C–01(b) read:

"Claim" means a civil action, including an original claim, counterclaim, cross-claim, or third-party claim, originally filed in circuit court against a licensed professional that is based on the licensed professional's alleged negligent act or omission in rendering professional services, within the scope of the professional's license, permit, or certificate, for others.

In 2005 the General Assembly amended CJP § 3–2C–01(b) [7] in response to a case that resulted in a professional negligence claim moving forward despite the plaintiff's failure to file a certificate of qualified expert. *See* Department of Legislative Services, SB 143 Fiscal and Policy Note (2005) ("This bill legislatively reverses the Court of Appeals [sic] April 2004 holding in *Baltimore County v. RTKL Associates Inc.,* 380 Md. 670, 846 A.2d 433."). [8]

In *Baltimore County v. RTKL Associates,* the Court of Appeals interpreted CJP §§ 3–2C–01 and –02 as they were before the 2005 amendment to CJP § 3–2C–01(b). 380 Md.

---

7. *See supra* pages 258–59, 32 A.3d at 159–60.

8. We quote the Department of Legislative Services here not to suggest that the General Assembly thought the *RTKL* opinion was incorrect, but only that it wished to enlarge the statutory protection beyond what it then was, to include actions against the employer of an allegedly negligent licensed professional.

670, 846 A.2d 433 (2004). Baltimore County contracted with RTKL Associates ("RTKL") to provide engineering and construction support services for a proposed education center. A subcontractor of RTKL set inaccurate grading benchmarks, which caused the County to incur substantial damages and delays. The County sued both contractors, but failed to file a certificate of qualified expert under CJP § 3–2C–02. After pre-trial motions and interlocutory appeals, the Circuit Court for Baltimore County granted the defendants' motion to dismiss. The circuit court held that the certificate requirement of the then-existing CJP § 3–2C–02 applied only to individuals, and not to suits against corporate firms such as RTKL. Still, the circuit court granted the defendants' motion to dismiss, holding that the three year statute of limitations of CJP § 5–101 applied against the County and had expired. *Id.* at 672–74, 846 A.2d 433.

The Court of Appeals granted *certiorari* on its own initiative, reversed the circuit court on the statute of limitations issue, and remanded to the circuit court for further proceedings. *Id.* at 689, 846 A.2d 433. The Court interpreted the then-existing CJP §§ 3–2C–01 and –02, and held that the circuit court was correct in denying defendants' motion to dismiss on the ground of failure to file a certificate of qualified expert. The Court reasoned that:

> Section 3–2C–01(c) defines a "licensed professional," for our purposes, as "an architect licensed under Title 3 of the Business Occupations and Professions Article" and "[a] professional engineer licensed under Title 14 of the Business Occupations and Professions Article." Section 3–303(a) of the Business Occupations Article makes clear that only an individual may be licensed as an architect. ("To qualify for a license, an applicant shall be an individual who meets the requirements of this section."). Section 14–304(a) contains the same requirement for licensure as a professional engineer. The restriction is a necessary one, as both laws require, as a qualification of obtaining a license, certain educational experience and successful completion of an examination, which, obviously, only individuals are capable of

satisfying. Thus, although both laws permit a corporate practice of architecture and engineering, under certain conditions, only individuals may be licensed.

*Id.* at 690, 846 A.2d 433. In holding that only individuals may be licensed professionals under the statute, the Court of Appeals interpreted properly the term "licensed professional" as then-defined under CJP 3–2C–01(c) and its companion sections in the BOP article.

In the next legislative session, the General Assembly passed SB 143 and amended CJP § 3–2C–01(b) as follows:

"Claim" means a civil action, including an original claim, counterclaim, cross-claim, or third-party claim, originally filed in circuit court OR UNITED STATES DISTRICT COURT against a licensed professional OR THE EMPLOYER, PARTNER-SHIP, OR OTHER ENTITY THROUGH WHICH THE LICENSED PROFES-SIONAL PERFORMED PROFESSIONAL SERVICES that is based on the licensed professional's alleged negligent act or omission in rendering professional services, within the scope of the professional's license, permit, or certificate, for others. (emphasis added in style of Maryland Legislative Drafting Manual to indicate text added to pre–2005 statute).

Heavenly Days argues that the 2005 amendment did not expand the application of CJP §§ 3–2C–01 and –02 to complaints against business entities when such complaints are not based on alleged negligence of a "licensed professional." Heavenly Days reasons that because Mayo did not possess any of the professional licenses enumerated in CJP § 3–2C–01(c) the certificate requirement does not apply to its claim against HSA. HSA does not allege that Mayo carried a professional license; it relies instead on an interpretation of "claim" under CJP § 3–2C–01(b) that includes claims against business entities. HSA argues further that the General Assembly's intent in enacting the 2005 amendment was "to expand the scope of 'claim' to include suits against the firms through which professionals practice."

We agree with HSA on both points. It is clear that the General Assembly amended CJP § 3–2C–01(b) in response to

*Baltimore County v. RTKL,* so that in future cases the claimant would be required to file a certificate when suing a professional business entity that employed the alleged negligent licensed professional. Further, case law interpreting the policy of the certificate requirement under the medical malpractice statute suggests that CJP § 3–2C–01 applies here. *See Chen v. State,* 370 Md. 99, 106, 803 A.2d 518 (2002) ("Two statutory provisions concerning the same subject matter are considered to be *in pari materia* and must be interpreted accordingly."). We interpreted an analogous statute requiring a certificate of qualified expert in medical malpractice claims as reflecting an intent to, as HSA puts it, "winnow professional negligence cases at an early stage, avoiding costly litigation where ultimate proof is likely to be absent." *D'Angelo v. St. Agnes Healthcare, Inc.,* 157 Md.App. 631, 645, 853 A.2d 813 (2004) ("The obvious purpose of the certificate requirement reflects the General Assembly's desire to weed out, shortly after suit is filed, nonmeritorious medical malpractice claims."). As discussed, the crux of Heavenly Days's complaint is the alleged deficiencies in the professional engineering services that HSA provided. To hold that Heavenly Days's complaint is not a "claim" under CJP § 3–2C–01(b) would be contrary to the policy of a statutory scheme designed in part to protect professional engineering firms from nonmeritorious tort claims.

Finally, the 2005 amendment to CJP § 3–2C–01(b) actually contained two substantive changes. The first change, as discussed above, was in response to *Baltimore County v. RTKL.* The second change, not directly on point here, was in response to a federal district court case. In *Adams v. NVR Homes,* plaintiffs sued a homebuilder for various claims, including professional negligence, but did not file a certificate of qualified expert. 135 F.Supp.2d 675 (2001). The United States District Court for the District of Maryland denied defendants' motion for summary judgment on the negligence claim, holding that CJP § 3–2C–01 did not apply because the action was not originally filed in a Maryland circuit court, as required by the statute at that time. *Id.* at 716. In response,

the General Assembly addressed the jurisdictional aspect of CJP § 3–2C–01(b) by requiring a certificate for cases originally filed in a United States District Court (in addition to those filed in a Maryland circuit court). Chapter 125, Acts of 2005, SB 143 (2005); *see supra* pages 262–63, 32 A.3d at 162.

The two substantive changes to CJP § 3–2C–01(b) serve to expand the scope of the certificate requirement, which supports our view that the General Assembly intended CJP § 3–2C–02 to apply when a claim involves professional services rendered in part by a non-licensed employee of a professional corporate employer. Because the certificate requirement is designed to "weed out" claims of professional negligence, we must interpret it broadly so as to effectuate the goal of the General Assembly. *Chow v. State*, 393 Md. 431, 443, 903 A.2d 388 (2006). We therefore hold that Heavenly Days's complaint is a "claim" within the meaning of CJP § 3–2C–01(b).

## C. *Professional Negligence*

Heavenly Days argues in the alternative that CJP § 3–2C–02 does not apply because it contemplates only claims based on "professional negligence," and its claim, contrary to its characterization in the amended complaint, is based merely on "ordinary negligence." Heavenly Days reasons that "the proof of the negligent acts alleged by Heavenly Days does not require knowledge of a licensed expert." Heavenly Days contends that Mayo's alleged negligence, "if proven, would be so obviously shown that the trier of fact could recognize it without expert testimony." *Schultz v. Bank of America*, 413 Md. 15, 29, 990 A.2d 1078 (2010).

HSA counters that Heavenly Days's complaint is a "claim" within the meaning of CJP § 3–2C–01(b)—regardless of Heavenly Days's effort to label it ordinary negligence—because "the statute does not speak to the proof required at trial. It speaks only to the requirement to file a certificate within ninety days of filing a suit against a firm through which a licensed professional practices, if the suit is based on alleged negligent acts or omissions in rendering professional services." The circuit court held:

I know [Heavenly Days] says it's ordinary negligence, that it's just failure to do this or to do that. But when I went back and re-read the first amended complaint, which I needed to do just briefly again, when you look at the negligence count, which is Count II, the words are professional negligence. That's how it's titled. And when you read Paragraph 57, "[HSA] owed [Heavenly Days] a duty to exercise reasonable care under the circumstances in the provision of its professional services to the plaintiff in connection with the cremation project." And we are talking about not ordinary negligence[,] but professional negligence and they relied on [HSA's] expertise in the provision of [their] professional services to [Heavenly Days. A]nd then the allegations on 59(a) through (f), and those are allegations of professional negligence. And that actually although then switches back to the breach of contract because the allegations of the breach of contract are failure to exercise reasonable care under the circumstances basically of the professional negligence.

Heavenly Days characterized its complaint as one for "professional negligence," and alleged that HSA breached its duty of care because

(a) Defendant failed to exercise reasonable care under the circumstances in the services rendered and advice given to the plaintiff;

(b) Defendant failed to exercise reasonable care under the circumstances in its failure to ensure that all correspondence and submittals were free of errors;

(c) Defendant failed to exercise reasonable care under the circumstances in advising Plaintiff in September 15, 2005 that it should consider the site plan approved;

(d) Defendant failed to exercise reasonable care under the circumstances in failing to timely and accurately respond to the conditions identified in the County's January 20, 2005 conditional approval letter;

(e) Defendant failed to exercise reasonable care under the circumstances in failing to timely meet the County's requirements for seeking a six month extension of the

January 19, 2007 expiration of the conditional site plan approval;

(f) Defendant failed to exercise reasonable care under the circumstances in making numerous mistakes in advice given and in the manner in which it undertook its performance, as illustrated by the examples in Paragraph [47].[9]

Paragraph 47 of the amended complaint sets forth many accusations of Mayo's mistakes in the site plan application approval process:

For example, she diagramed the building on a copy of the site plan that already had signatures on it, giving the appearance that it had been approved as diagramed; she delayed in sending "as builts" for the storm water pond and failed to complete the storm water management tasks; she instructed the [sic] Benchmark that approvals had been obtained and that he should go ahead and build the building; she indicated that necessary approvals and permission had been obtained and in reliance thereon Heavenly Days bought the incinerator machines and borrowed money for the project which then had to be repaid (and on which interest accrued) even though no off-setting income was coming in due to the delays in the start of operations caused by HSA's failure to adequately perform its services; failed to include in the revised plans a front door, a front walkway and a handicapped parking spot, resulting in Heavenly Days hiring a replacement engineer to fix those mistakes; and Mayo included in the plans a slab for a dumpster that is not needed.

Heavenly Days's allegations are based on alleged acts of professional negligence within the scope of engineering services. With respect to the first allegation, it is undisputed that the "services rendered" were the provision of a site plan

---

9. In the original complaint, part (f) of Count II referenced paragraph 45, which is a laundry list of accusations against Mayo. The amended complaint included two extra factual paragraphs, but the amended part (f) of Count II does not reflect the change in numbering.

application by HSA on behalf of Heavenly Days. The site plan incorporated stormwater management documents that were prepared, signed, and sealed by an HSA employee who was a licensed professional engineer. As to the second allegation, ensuring that the site plan submittals were "free of errors" would necessarily require knowledge of engineering principles. The allegations that Mayo erroneously advised Heavenly Days that the site plan was approved required her to interpret comments on the site plan, which also required knowledge of engineering principles.[10] The final allegation, that Mayo failed to request timely an extension of the conditional site plan approval, could have been performed by a layman. That the specific task of requesting an extension was not an engineering function does not alter the fact that the underlying service of gaining approval for a site plan was unquestionably a professional engineering service.

Lastly, there are six allegations against Mayo or HSA in paragraph 47 of the amended complaint. Not a single one is an action or inaction exclusively within the purview of a layman. Rather, these allegations speak to professional services by an engineering firm and an employee of that firm assigned with coordinating the professional services.

The scope of work intended by the contract between Heavenly Days and HSA called for professional engineering services, specifically the preparation and submission of a site development plan application for the proposed crematorium. The stormwater management calculations attached to the site plan were prepared, supervised, approved, signed, and sealed by a professional engineer, T. Merchant McDonald. That another HSA employee also performed support services and coordinated communications between Heavenly Days and vari-

---

10. The record contains only two of the seven conditions attached to the conditional approval of the site plan. The first stated that construction of the crematorium must begin within two years to vest the conditional approval. The second stated that the Maryland Department of the Environment ("MDE") Air Quality Division had to approve the crematorium prior to the approval of any building permit. Heavenly Days secured approval from MDE on September 1, 2005.

ous Frederick County agencies does not detract from the professional nature of the services rendered. Though the amended complaint lays out in great detail a factual background which paints Mayo in an unflattering light, the only named defendant is HSA. At oral argument, counsel for Heavenly Days stated that nothing in the allegations was done by any employee of HSA other than Mayo. The pleadings indicate otherwise. As noted above, count II of the amended complaint is titled "Professional Negligence." All of the allegations in Count II were against HSA, not against Mayo.

 Upon review of CJP §§ 3–2C–01 and –02, we agree with the circuit court that Heavenly Days's amended complaint was a "claim" within the meaning of CJP § 3–2C–01(b). In light of the 2005 amendment to that section expanding the scope of the certificate requirement to include professional business organizations, it matters not that Mayo herself does not hold a professional license of the type enumerated in CJP § 3–2C–01(c). HSA is the only named defendant, and at all times Mayo and HSA performed professional engineering services for Heavenly Days pursuant to a contract for professional engineering services. Further, Heavenly Days's "professional negligence" versus "ordinary negligence" distinction is without merit here. The statute does not contemplate such distinctions where the alleged negligence arises from a failure to perform professional engineering services within the standard of care of a reasonable engineer.

### III. Estoppel

 Heavenly Days next argues that HSA was estopped from raising the failure to file a certificate because it did not do so until its motion to dismiss the amended complaint. Heavenly Days contends that, during the course of multiple negotiations for extensions of time to file preliminary motions and responsive pleadings, HSA "implicitly represented it would defend on the merits." Thus, Heavenly Days argues, HSA waived its right to move for a dismissal for failure to file a certificate. Heavenly Days cites no precedent for this contention, and we find this argument to be without merit. As

HSA correctly notes, a motion to dismiss based on the failure to file a certificate of qualified expert under CJP § 3–2C–02 is not a mandatory motion under Maryland Rule 2–322(a). Since it is not waived by failure to file in a pre-answer preliminary motion, such a defense may be raised at any time, before or after filing an answer or other pleading.[11] *See* Md. Rule 2–322(b).

HSA filed a motion to dismiss the original complaint for failure to state a claim upon which relief can be granted, arguing that Heavenly Days failed to make out a case for the breach of contract claim, and that Heavenly Days's negligence claim was barred by the economic loss rule. Had the circuit court granted HSA's motion to dismiss, HSA would have been entitled to a dismissal with prejudice. Further, when HSA filed the motion to dismiss the original complaint on January 20, 2010 the ninety-day filing deadline had not yet lapsed and therefore the issue was not ripe. Thus, there was no incentive for HSA to argue Heavenly Days's failure to file a certificate at that time, when success on that issue would entitle HSA to a mere dismissal without prejudice. In response to HSA's motion to dismiss Heavenly Days filed an amended complaint, which prompted HSA to withdraw its motion to dismiss the original complaint and instead file a motion to dismiss the amended complaint on March 19, 2010. By that time HSA's initial defense tactic had already failed, and the time for Heavenly Days to file a certificate had expired. Rather than being estopped from raising the certificate issue in its motion to dismiss the amended complaint, it appears that HSA raised the issue at a logical point in the proceedings.

IV. Waiver/Modification of the Certificate Requirement

As previously noted, upon request and a showing of good cause by the claimant, the trial court has discretion to waive

---

11. Further, we note that parties are free to negotiate extensions of time without making any implicit representations of their litigation strategies. *See, e.g. Stromberg Metal Works, Inc. v. Univ. of Md.,* 382 Md. 151, 155, 854 A.2d 1220 (Md.2004) (noting that the parties agreed to extension of various filing deadlines).

or modify the required filing of a certificate of qualified expert. CJP § 3–2C–02(c). The Court of Appeals has described the good cause standard in the context of extending a deadline for a required filing:

"Circumstances that have been found to constitute good cause fit into several broad categories: excusable neglect or mistake (generally determined in reference to a reasonably prudent person standard), serious physical or mental injury and/or location out-of-state, the inability to retain counsel in cases involving complex litigation, . . . ignorance of the statutory [ ] requirement," and "where representations made by [ ] government representatives are misleading." *Kearney v. Berger,* 416 Md. 628, 663, 7 A.3d 593 (2010) (quoting *Rios v. Montgomery County,* 386 Md. 104, 141–42, 872 A.2d 1 (2005)).

Heavenly Days argues that it made a showing of good cause for three reasons: first, that it didn't submit a certificate because it reasonably calculated that CJP § 3–2C–02 did not apply because Mayo is not a licensed professional under CJP § 3–2C–01(b); second, that the negligence complained of is not the type of negligence that requires expert testimony at trial; and third, that dismissal after the expiration of the statute of limitations is an unduly harsh sanction under the circumstances. HSA counters that the circuit court had no discretion to deny Heavenly Days's request for waiver or modification of the certificate requirement because Heavenly Days's request was untimely, having exceeded the ninety-day filing period. HSA argues in the alternative that, even if the circuit court had the power to waive or modify the certificate requirement, it did not abuse its discretion in finding no good cause to do so.

 The circuit court held that "good cause was never shown by the plaintiff for the failure to file the certificate timely." We review this holding under an abuse of discretion standard. *Kearney,* 416 Md. at 661, 7 A.3d 593 (finding no abuse of discretion in the circuit court's conclusion that there was no good cause to extend the deadline for filing a certificate in a medical malpractice action). There is an abuse of

discretion "where no reasonable person would take the view adopted by the [trial] court," or when the court acts "without reference to any guiding principles." An abuse of discretion may also be found where the ruling under consideration is "clearly against the logic and effect of facts and inferences before the court." *In re Adoption / Guardianship No. 3598,* 347 Md. 295, 312, 701 A.2d 110 (1997). "Whether there has been an abuse of discretion depends on the particular circumstances of each individual case." *Pantazes v. State,* 376 Md. 661, 681, 831 A.2d 432 (2003). "A ruling reviewed under an abuse of discretion standard will not be reversed simply because the appellate court would not have made the same ruling." *King v. State,* 407 Md. 682, 711, 967 A.2d 790 (2009) (internal quotation marks and citation omitted).

■ We find compelling HSA's argument that the circuit court did not have discretion to modify the certificate requirement because Heavenly Days's request was untimely. No reported cases directly address the timeliness of a request for waiver or modification of the certificate requirement of CJP § 3–2C–02(c). In a case decided on other grounds, however, this Court looked to an analogous statutory provision for guidance.

In *Heritage Harbour v. Reynolds,* 143 Md.App. 698, 795 A.2d 806 (2002), a homeowners association sued Heritage Harbour, alleging various defects in the construction of condominiums. Heritage Harbour in turn filed a complaint for contribution and indemnity against Reynolds. The Circuit Court for Anne Arundel County granted Reynolds's motion to dismiss for failure to state a claim upon which relief can be granted. We affirmed, holding that the trial court properly dismissed Heritage Harbour's complaint for failure to state a claim and that, "in any event, appellants would not have survived the motion to dismiss because of . . . appellants' failure to file the required certificate of a qualified expert" under CJP § 3–2C–02. *Id.* at 702, 795 A.2d 806

Just as Heavenly Days did here, the claimant in *Heritage Harbour* submitted a certificate after the ninety-day deadline.

We rejected the claimant's argument that an untimely-filed certificate can satisfy the requirement of CJP § 3–2C–02(a), and explained:

> appellees counter that the [certificates] filed were insufficient—they failed to allege any specific deficiencies in the performance of appellees' duties—and untimely—they were not filed until December 15, 2000. Noting that appellants were required to file the certificates no later than October 25, 2000, or ninety days after the filing of the complaint, appellees argue that filing the certificates forty-five days late is in violation of the statute. As such, they maintain, the trial court properly dismissed the action. We concur with appellees' contention and the decision to dismiss appellants' complaint without prejudice for failure to comply with statutory authority.

*Id.* at 709, 795 A.2d 806. We noted, in dicta, that the General Assembly amended an analogous statute—CJP § 3–2A–04(b), which requires the filing of a certificate in medical malpractice claims—to provide for a presumptive ninety-day extension for time to file a certificate when the limitations period has expired and the failure to file the certificate was not willful or the result of gross negligence. *Id.* n. 4. Though our conclusion did not affect our holding in the case, we stated, "That the legislature declined to include such a provision in the section at issue here supports the inference that the grace period should not be extended to parties who fail to timely file the requisite certificate." *Id.* at 709, 795 A.2d 806.

Here, Heavenly Days filed the original complaint on October 29, 2009, so the ninety-day deadline to file a certificate expired on January 27, 2010. Heavenly Days did not file the certificate of Thomas Lane until February 22, 2010. Thus, Heavenly Days was twenty-five days late in filing the certificate required by CJP § 3–2C–02. Under the medical malpractice statute, the claimant can be afforded the right to an automatic ninety-day extension, even if the request is late. As we noted in *Heritage Harbour*, however, there is no such provision in CJP § 3–2C–02(c) that allows a trial judge to grant a waiver or modification of the certificate requirement

after the ninety-day filing deadline has expired. Rather, under CJP § 3–2C–02(c)(2), the claimant's request for a waiver or modification of the certificate requirement merely "suspends" the ninety-day filing period. If, as was the case here, the ninety-day filing period has already expired when the claimant makes the request to waive or modify the certificate requirement, there is no remaining filing period for the court to suspend. Thus, we agree with the circuit court's holding that it did not have discretion to grant Heavenly Days's untimely request for a waiver or modification of the certificate requirement.

Even if the circuit court did have such discretion, the circuit court's decision not to grant a modification or waiver of the certificate requirement was not an abuse of discretion. Heavenly Days argues that it showed the circuit court good cause to waive or modify the certificate requirement, in part because its failure to timely file a certificate was based on a reasonable belief that CJP § 3–2C–02 did not apply. The record contains no evidence to illuminate whether Heavenly Days's failure to file the certificate was indeed due to a shrewd calculation that no filing was required, or if instead it was due to ignorance of the statute's requirements.[12] Either way, the circuit court reasonably rejected this argument, and we find no abuse of discretion.

As to Heavenly Days's prejudice argument, we are sympathetic to its contention that the statute of limitations has run, effectively converting the August 16, 2010 dismissal without prejudice into a dismissal with prejudice. The Court of Appeals previously acknowledged that dismissing a plaintiff's claim for failure to file a certificate in a medical malpractice action "was potentially harsh where the statute of limitations had run because such claimants were time barred from refil-

---

12. Heavenly Days's brief states that it filed the certificate of Thomas Lane with its opposition to HSA's motion to dismiss the amended complaint "out of an abundance of caution." A more cautious strategy would have been to file the Lane certificate timely with the original or amended complaint, rather than waiting until the ninety-day filing deadline had expired.

ing their claims, despite the fact that the claims may have been meritorious and timely when filed." *Edward W. McCready Mem'l Hosp. v. Hauser,* 330 Md. 497, 506, 624 A.2d 1249 (1993). Still, we are unable to find an abuse of discretion in the circuit court's holding that Heavenly Days did not make the requisite showing of good cause to justify the court's modifying or waiving the certificate requirement.

 Heavenly Days could have avoided this result by filing its claim earlier, or by including the required certificate when it did eventually file the claim. *See Walko Corp. v. Burger Chef Sys.,* 281 Md. 207, 211–12, 378 A.2d 1100 (1977) (explaining that the statute of limitations reflects a legislative judgment of what is deemed an adequate period of time in which a person of ordinary diligence should bring his action). The running of the limitations period is not tolled by a procedurally defective action which is timely filed. *Id.* Further, statutes of limitations are to be strictly construed, and courts may not give a strained construction to evade their effect. *Decker v. Fink,* 47 Md.App. 202, 422 A.2d 389 (1981).

## V. Sufficiency of Certificate of Thomas Lane

As previously noted, Heavenly Days's opposition to HSA's second motion to dismiss included as an exhibit a certificate identifying Thomas Lane as an expert qualified to testify on the standards of practice as a property line surveyor. Heavenly Days contends that this certificate satisfied the requirements of CJP § 3–2C–02(d)(1). HSA counters that the certificate did not meet the statute's requirements because HSA is an engineering firm under BOP § 14–101, and Lane is a property line surveyor under BOP § 15–101. HSA contends that Heavenly Days's allegations involve plan application and approval, not the location of property lines. Thus, they argue, Lane is not a qualified expert of "the same discipline," as required by CJP § 3–2C–02(d)(1).

The circuit court held that the Lane certificate does not meet the requirement of CJP § 3–2C–02(d)(1). Because we hold that Heavenly Days's request to waive or modify the

certificate requirement was untimely, and therefore the circuit court had no discretion to waive or modify the certificate requirement, we need not reach this issue.

## CONCLUSION

Heavenly Days's complaint is a "claim" under CJP § 3–2C–01(b), as was intended by the legislature. Thus, the circuit court did not err in granting HSA's motion to dismiss for Heavenly Days's failure to file a certificate of qualified expert as required by CJP § 3–2C–02. HSA was not estopped from filing such a motion merely by excluding the argument from its preliminary motion to dismiss the original complaint. The circuit court did not have the discretion to modify the certificate requirement because Heavenly Days's request to modify was untimely. Thus, the circuit court did not abuse its discretion in declining to modify the certificate requirement, and we need not reach whether Heavenly Days showed good cause to modify or whether the untimely certificate of Thomas Lane met the requirements of CJP § 3–2C–02.

**JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**