72 A.3d 199

HEAVENLY DAYS CREMATORIUM, LLC

v.

HARRIS, SMARIGA AND ASSOCIATES, INC.

No. 128, Sept. Term, 2011.

Court of Appeals of Maryland.

Aug. 15, 2013.

Dale A. Cooter (Cooter, Mangold, Deckelbaum & Karas, LLP, Washington, DC), on brief, for Petitioner.

James F. Lee, Jr. (Arthur T.K. Norris of Lee & McShane, P.C., Washington, DC), on brief, for Respondent.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, McDONALD, BELL *, JJ.

McDONALD, J.

Each of us has a duty to act with reasonable care to avoid acts or omissions that one may reasonably foresee will injure another.[1] Tort law as explicated by the courts in the common law of negligence, and as modified from time to time by the Legislature, provides a remedy for a violation of that duty. In some circumstances, an employer may be liable for the negligence of an employee—a principle that has come to be known by the Latin phrase *respondeat superior*.[2]

---

* Bell, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. This Court has approved the following formulation of that duty:

   The rule that you are to love your neighbor becomes in law, you must not injure your neighbor, and the lawyer's question, Who is my neighbor? receives a restricted reply. You must take reasonable care to avoid acts or omissions which you can reasonably foresee would be likely to injure your neighbor. Who, then, in law is my neighbor? The answer seems to be persons who are so closely and directly affected by my act that I ought reasonably to have them in contemplation as being so affected when I am directing my mind to the acts or omissions which are called in question.

   *Gourdine v. Crews*, 405 Md. 722, 746–47, 955 A.2d 769 (2008) (citing *Keeton, et al., Prosser and Keeton on the Laws of Torts § 53* ).

2. The Latin translates as "let the master answer."

Those who belong to certain professions are often said to "practice" the particular profession. They enter into special relationships with their clients or customers and assume enhanced duties of care. They are expected to act in accordance with the "standard of care" for their profession. A negligent failure to satisfy the "standard of care" is often referred to as "malpractice." The doctrine of *respondeat superior* can also apply.

When professional malpractice is alleged, it is often thought that factfinders who are not members of the particular profession may have difficulty understanding the standard of care against which the defendant's actions are to be measured without the assistance of expert opinion. Accordingly, it is also thought that a prospective plaintiff should obtain a favorable expert opinion at the outset as a prerequisite to prosecuting a malpractice action.

Professional engineers are one such profession. The General Assembly has determined that, before one may prosecute a suit alleging a breach of the standard of care owed by a professional engineer to a client, the plaintiff ordinarily must obtain and file a "certificate of a qualified expert" attesting that the engineer failed to satisfy that standard. Maryland Code, Courts & Judicial Proceedings Article ("CJ"), § 3–2C–01 *et seq.* The Legislature has allowed for cases in which an expert certificate should not be a prerequisite to suit by granting courts discretion to waive or modify the certificate requirement on motion of the plaintiff—a motion that tolls the deadline for filing a certificate.

In this case, Petitioner Heavenly Days Crematorium, LLC ("Heavenly Days"), which operates an animal crematory in Urbana, Maryland, filed a complaint in the Circuit Court for Frederick County against Respondent Harris, Smariga & Associates, Inc. ("HSA"), a Frederick planning and engineering firm, alleging breach of contract and "professional negligence." The complaint did not ascribe HSA's alleged failings to a licensed engineer and was not accompanied by a certificate of a qualified expert. Upon motion of HSA, the Circuit

Court dismissed the complaint for failure to file a certificate within the requisite time period—a decision that was affirmed by the Court of Special Appeals.

We reverse. The certificate requirement applies only to a cause of action based on a "licensed [engineer]'s negligent act or omission in rendering [engineering] services within the scope of the [engineer]'s license." It may be that the alleged deficiencies in HSA's services are ultimately to be laid at the doorstep at one of its licensed engineers and, if true, would be a deviation from the standard of care required of such a professional. But in the context of a motion to dismiss, when the allegations of the complaint are to be accepted as true and viewed in the light most favorable to the plaintiff and those allegations do not fault a licensed engineer, it is premature to conclude that an expert certificate was required.

### Background

The following facts are alleged in Heavenly Days' First Amended Complaint.

*New Animal Crematorium in Frederick County*

During August 2004, Heavenly Days, which was operating a pet crematorium in Rockville, decided to relocate its operations to Greenbriar Veterinary Hospital and Kennels ("Greenbriar") in Urbana in Frederick County. Greenbriar had previously obtained approval from the County for a 40' by 80' concrete slab on which a crematorium could be constructed.

Heavenly Days began the application process with the State and Frederick County to obtain permission to build and operate the crematorium on the site. To assist with that process, Heavenly Days hired HSA and the law firm of Miles & Stockbridge. Heavenly Days' primary contact at HSA was Chris Mayo. (The complaint does not specify Ms. Mayo's specific position with HSA). Heavenly Days instructed Ms. Mayo and an attorney from Miles & Stockbridge to seek approval from the Frederick County Planning Commission

(the "Planning Commission") for a site plan for a memorial garden/cemetery and crematorium.

*Mistake in Proposed Site Plan*

During the next few months, the approval process moved forward, but the seeds of later difficulties were sown. The site plan submitted by Ms. Mayo accurately depicted the intended 40′ × 80′ crematorium building, but the written description on the plan incorrectly stated that the building's dimensions were to be 40′ × 30′. When Heavenly Days advised Ms. Mayo of the mistake, she gave assurance that it could be corrected at any time. However, she never corrected this mistake.

On January 19, 2005, the Planning Commission approved the site plan with the mistake, contingent on the satisfaction of seven conditions described in a January 20, 2005, letter to Ms. Mayo. That letter also noted that the plan approval would remain valid so long as construction began within two years of the approval—*i.e.*, by January 19, 2007. It stated that Heavenly Days could seek a one-time six-month extension by making the request in writing at least one month before the deadline.

After receiving the conditional approval, Heavenly Days decided to relocate and expand the size of the planned crematorium. It asked Ms. Mayo to submit a revised site plan indicating a 40′ × 100′ building (rather than the previous 40′ × 80′ structure) in a new location on the property. Heavenly Days also asked Ms. Mayo to fix the mistaken written description of the crematorium in the plan. In August 2005, Ms. Mayo submitted a revised site plan to the County Department of Planning and Zoning showing the building's new location. The revised plan did not, however, show the building's 40′ × 100′ dimensions or correct the mistaken written description in the conditionally approved plan that said the building would be 40′ × 30′.

*"Consider it approved"*

After Ms. Mayo received the County's comments on the revised plan, she wrote to Heavenly Days on September 15,

2005, stating: "I have to address all these comments from the commenting agencies before we receive the signed site plan. As you can see, none of the comments adversely affect the layout of the plan as we prepared it. So consider it approved." The following day, Heavenly Days reminded Ms. Mayo that the dimensions of the planned crematorium were 40' × 100'. On September 23, 2005, she submitted another revised site plan to the County showing the correct size of the building.

*Construction Begins*

Even though the County had not yet approved the revised plan, Heavenly Days began preparing the Urbana site. On July 3, 2006, Heavenly Days applied for, and received, a building permit from the County for a "40 × 100 Crem[a]torium Building." Construction began, but less than two weeks later, Heavenly Days was advised by the County of design deficiencies in the plans for the crematorium.

*Construction Halted*

In an October 31, 2006, meeting with the County Department of Permits and Inspection, Heavenly Days' builder was informed that the crematorium had not yet been approved. In a later discussion with the Planning and Zoning Department, the builder was told that approval had been given for a 40' × 30' crematorium and not the intended 40' × 100' structure. Ms. Mayo told the builder that there was no problem with approval of the site and that "everything would be taken care of." On November 16, 2006, Ms. Mayo sent an e-mail to a County development review technician stating, "It sounds like I need to get the plan in for signature and get a site plan extension." The technician informed Ms. Mayo that, although HSA had received conditional approval, the plan was not approved, and that no extension could be granted.[3]

---

**3.** Heavenly Days faults Ms. Mayo for not making a written request for an extension, as provided for in the January 20, 2005, conditional approval letter. Both the letter and the advisement by the County technician, however, indicate the potential extension under that letter

On January 5, 2007, Ms. Mayo, together with representatives of Heavenly Days, its attorney, and the builder, met with the County Planning and Zoning Department and requested an extension. The County declined because there was insufficient time for a revised site plan to be reviewed before the initial approval expired on January 19. Nonetheless, Ms. Mayo submitted a final revised site plan, correcting mistakes and addressing the County's comments, on January 10, 2007. Heavenly Days' attorney then requested a six-month extension for approval of the site plan, which was denied on January 18.

*Reapplication and Resolution*

On January 26, 2007, the Department of Permits and Inspection informed Heavenly Days that the crematorium on the site had been "illegally constructed." Heavenly Days was required to reapply for an approved site plan and building permit, and pay a "working without a permit fee." The new application was denied in March 2007 on the basis that a crematorium was not a permitted use in the zoning district. Heavenly Days pursued an amendment of the Frederick County zoning ordinance to permit that use and ultimately obtained the necessary use and occupancy permit in October 2009.

*Filing of Complaint*

On October 29, 2009, Heavenly Days filed a complaint in the Circuit Court for Frederick County against HSA seeking monetary damages for breach of contract and "professional negligence." The factual allegations of the complaint focused on alleged mistakes made by Ms. Mayo, which it summarized as follows:

In addition to the mistakes Mayo made regarding the erroneous description of the size of the building, her failure to obtain approval to move the site and failure to advise Heavenly Days that she did not obtain approval, her failure

---

would pertain to the deadline for commencement of construction of an approved project, not for final site-plan approval.

to obtain approval to build a larger building, and her failure to timely seek a six month extension, ... Mayo made other mistakes. For example, she diagramed the building on a copy of the site plan that already had signatures on it, giving the appearance that it had been approved as diagramed; she delayed in sending "as builts" for the storm water pond and failed to complete the storm water management tasks; she instructed the [builder] that approvals had been obtained and that he should go ahead and build the building; she indicated that necessary approvals and permission had been obtained and in reliance thereon Heavenly Days bought the incinerator machines and borrowed money for the project which then had to be repaid (and on which interest accrued) even though no off-setting income was coming in due to the delays in the start of operations caused by HSA's failure to adequately perform its services; failed to include in the revised plans a front door, a front walkway and a handicapped parking spot, resulting in Heavenly Days hiring a replacement engineer to fix those mistakes; and Mayo included in the plans a slab for a dumpster that is not needed.

Both counts of the complaint stated that they were based on HSA's failure to exercise reasonable care:

(a) ... in the services rendered and advice given to Plaintiff;

(b) ... in its failure to ensure that all correspondence and submittals were free of errors;

(c) ... in advising Plaintiff in September 15, 2005 that it should consider the site plan approved;

(d) ... in failing to timely and accurately respond to the conditions identified in the County's January 20, 2005 conditional approval letter;

(e) ... in failing to timely meet the County's requirements for seeking a six month extension of the January 19, 2007 expiration of the conditional site plan approval.

(f) ... in making numerous mistakes in advice given and in the manner in which it undertook its performance, as illustrated by the examples in [the complaint].

On January 20, 2010, HSA moved to dismiss the complaint on the grounds that the complaint failed to allege a contract between Heavenly Days and HSA and that the negligence claim was precluded by a legal doctrine that would restrict liability for negligence to the terms of the contract. The motion did not fault Heavenly Days for failing to file a certificate pursuant to CJ § 3–2C–01 *et seq.*

On February 22, 2010, Heavenly Days filed an opposition to the motion along with an amended complaint. HSA then withdrew its initial motion to dismiss, but, on March 19, filed a new motion to dismiss the amended complaint, based on the fact that Heavenly Days had not filed a certificate within 90 days of its original complaint as required by CJ § 3–2C–02. Heavenly Days filed an opposition to the motion on April 5, 2010, arguing that a certificate was not required. In the alternative, it asked the court to grant an extension for the filing of a certificate and attached an expert certificate to its pleading. It is undisputed that the certificate was filed more than 90 days after the filing of the complaint.[4]

*Dismissal of Complaint and Appeal*

The Circuit Court held a hearing on the motion to dismiss on August 12, 2010. At the conclusion of the hearing the Circuit Court concluded that the certificate requirement was triggered by the allegations of the complaint. The Court also found that there was not "good cause" to extend the time for filing the certificate. Accordingly, it dismissed the amended complaint without prejudice. Because the statute of limita-

---

4. The Court of Special Appeals, assuming that the certificate was filed on February 22, 2010, concluded that it was filed 25 days late. 202 Md.App. at 279, 32 A.3d 155. However, it appears from the record that the certificate is dated April 2 and was filed on April 5, 2010, with Heavenly Days' response to the motion to dismiss the First Amended Complaint. This difference has no bearing on our decision.

tions had run, Heavenly Days now concedes, the court's action was effectively a dismissal with prejudice.[5]

Heavenly Days appealed to the Court of Special Appeals, which affirmed the judgment of the Circuit Court.[6] Heavenly Days filed a petition for writ of certiorari, which we granted.

## Discussion

■ The primary issue in this appeal is whether, in the current posture of this case, Heavenly Days was obligated to file a "certificate of a qualified expert" under CJ § 3–2C–01 *et seq.* as a prerequisite to bringing its action against HSA. If so, we must address the scope of the Circuit Court's authority to waive or modify that requirement and the merits of the court's decision not to extend the time for filing a certificate in this case.

### *Standard of Review*

■ In deciding whether to grant a motion to dismiss a complaint, a court is to assume the truth of the factual allegations of the complaint and the reasonable inferences that may be drawn from those allegations in the light most favorable to the plaintiff.[7] In reviewing a circuit court's decision to dismiss a complaint, an appellate court applies the same standard and assesses whether that decision was legally correct.[8] Thus, we accord no special deference to the Circuit Court's legal conclusions.

---

5. In the Circuit Court, Heavenly Days had asserted that it would have meritorious arguments to a motion to dismiss a re-filed complaint on the grounds that the limitations period had expired.

6. *Heavenly Days Crematorium, LLC v. Harris, Smariga & Assocs., Inc.,* 202 Md.App. 252, 32 A.3d 155 (2011).

7. *Bobo v. State,* 346 Md. 706, 708, 697 A.2d 1371 (1997). HSA disagrees that this standard of review applies and argues that the court considering its motion to dismiss is not confined to the allegations of the complaint and need not take inferences in favor of the plaintiff. HSA cites no authority for that proposition.

8. *See Reichs Ford Road Joint Venture v. State Roads Comm'n,* 388 Md. 500, 509, 880 A.2d 307, 312 (2005) (citing *Adamson v. Corr. Med. Servs.,* 359 Md. 238, 246, 753 A.2d 501 (2000)).

*Whether Heavenly Days was obligated to file an expert certificate with its complaint*

The filing requirement is set forth in CJ § 3–2C–02, which reads in pertinent part:

(a)(1) Except as provided in subsections (b) and (c) of this section, a claim shall be dismissed, without prejudice, if the claimant fails to file a certificate of a qualified expert with the court.

(2) A certificate of qualified expert shall:

(i) Contain a statement from a qualified expert attesting that the licensed professional failed to meet an applicable standard of professional care;

(ii) Subject to the provisions of subsection (b) and (c) of this section, be filed within 90 days after the claim is filed;

(iii) Be served on all other parties to the claim or the parties' attorneys of record in accordance with the Maryland Rules.

CJ § 3–2C–02(a). The "qualified expert" must be knowledgeable as to the standard of care in the particular profession. CJ § 3–2C–01(d).[9] A plaintiff may obtain limited discovery from the defendant "reasonably necessary" to obtain the requisite certificate. CJ § 3–2C–02(b). If the defendant does so, the 90–day deadline for filing a certificate runs from the completion of discovery. CJ § 3–2C–02(b)(2). Also, a plaintiff may ask the court to waive or modify the certificate requirement in a particular case "for good cause." CJ § 3–2C–02(c). If so, the time for filing any certificate is suspended until the court rules on the request. If the court retains the

---

**9.** The statute defines "qualified expert" in pertinent part as "an individual who is a licensed professional ... knowledgeable in the accepted standard of care in the same discipline as the licensed professional against whom a claim is filed." CJ § 3–2C–01(d). This is perhaps unsurprising, given that the qualified expert is to provide a statement that the licensed professional failed to meet the standard of care for the particular profession. CJ § 3–2C–02(a)(2)(i).

filing requirement, the certificate need not be filed until 90 days after the requirement, absent a court order to the contrary. CJ § 3–2C–02(c)(2).

Thus, in order to prosecute a "claim," the plaintiff must file a "certificate of a qualified expert" within a certain time period, or obtain a waiver or modification of the certificate requirement from the court. Heavenly Days argues that its complaint is not a "claim" under this statute and therefore was not subject to the expert certificate requirement.

*"Claim"*

The statute defines "claim" as "a civil action, including an original claim, counterclaim, cross-claim, or third-party claim, originally filed in a circuit court or United States District Court against a licensed professional or the employer, partnership, or other entity through which the licensed professional performed professional services that is based on the licensed professional's alleged negligent act or omission in rendering professional services, within the scope of the professional's license, permit, or certificate, for others." CJ 3–2C–01(b). A "claim" must thus satisfy three elements for the certificate requirement to apply:

(1) *Venue.* It must be part of a civil action filed in a State circuit court or a federal District Court.

(2) *Defendant.* It must be asserted against a "licensed professional" or the employer or entity through which the licensed professional provides professional services.

(3) *Alleged Negligence.* It must be based on the licensed professional's negligent act or omission in rendering professional services within the scope of the license. In other words, the negligence alleged in the claim must be a deviation from the standard of care for the particular profession.

There is no question that the first element is present as Heavenly Days filed its complaint in circuit court. Therefore, we focus on the other two elements.

*"Licensed Professional"*

For purposes of this statute, the term "licensed professional" includes an architect, interior designer, landscape archi-

tect, professional engineer, and professional land surveyor licensed under applicable sections of the Business Occupations and Professions Article ("BOP") of the Maryland Code. CJ § 3–2C–01(c). The sole defendant in the amended complaint is HSA. According to the complaint, HSA provides engineering services; it is thus an entity through which licensed professionals provide services.[10]

Heavenly Days' complaint makes numerous allegations generally against HSA without reference to any specific employee. It mentions only two HSA employees by name: Chris Mayo and Glenda Watkins.[11] Much of the alleged negligence is attributed to Ms. Mayo but the complaint does not indicate whether she was licensed as an engineer—or any of the other professions listed in the statute—at the time of the events recounted in the complaint.[12]

Heavenly Days argues that its complaint identifies Ms. Mayo as the HSA employee responsible for the alleged negligent acts and omissions, that there is no allegation regarding a "licensed professional" in the complaint, and that therefore the complaint is not brought against HSA in its capacity as an employer of a licensed professional. Consequently, Heavenly Days reasons, the complaint is not a "claim" under CJ § 3–2C–01 and the certificate requirement of CJ § 3–2C–02 does not apply.

HSA argues for a broader reading of the statute that would encompass the First Amended Complaint even though it does

---

**10.** With certain exceptions not relevant here, it is unlawful to practice engineering without a license. *See* BOP § 14–301.

**11.** The First Amended Complaint identifies Glenda Watkins as an HSA employee who, in November 2006, was in contact with a County development review technician in regards to the status of the project.

**12.** HSA does not contend that Ms. Mayo was licensed as a professional engineer. There is some indication in materials submitted by Heavenly Days in response to the motion to dismiss that she has studied landscape architecture, but there is no allegation or evidence of her licensing status in the record.

not allege negligent acts by any specific licensee. HSA, and the amicus brief supporting its position,[13] attempt to bridge this gap in two ways.

First, HSA observes that, because Heavenly Days contracted for civil engineering services, those services necessarily involved work or supervision by a licensed professional. HSA asks the Court to take judicial notice of the fact that one of its licensed professional engineers signed and sealed stormwater management computations in connection with the site plan that is filed in the land records. However, that engineer is not mentioned by name or otherwise in the complaint. HSA implies that he was closely involved in Heavenly Days' project but does not expressly state that he was involved in the actions of Ms. Mayo that are the focus of the complaint. There is little in the record—and nothing in the complaint— from which we can infer that the complaint is based on the "alleged negligent act or omission" of that engineer "in rendering professional services, within the scope of [his] license."

Second, HSA and the amicus note that, while an individual generally must be licensed as a professional engineer to "practice engineering," [14] an individual who is not licensed as a professional engineer may practice engineering under the

---

**13.** An amicus brief in support of HSA was submitted by the American Council of Engineering Companies/Maryland, Inc.

**14.** The statute defines "practice engineering" as:

(f)(1) "Practice engineering" means to provide any service or creative work the performance of which requires education, training, and experience in the application of:

(i) special knowledge of the mathematical, physical, and engineering sciences; and

(ii) the principles and methods of engineering analysis and design.

(2) In regard to a building or other structure, machine, equipment, process, works, system, project, or public or private utility, "practice engineering" includes:

(i) consultation;

(ii) design;

(iii) evaluation;

(iv) inspection of construction to ensure compliance with specifications and drawings;

supervision of a licensed engineer. *See* BOP §§ 14–301(b)(4)–(5), 14–303. They argue that Ms. Mayo—who HSA apparently concedes was not a licensed professional for purposes of CJ § 3–2C–01 *et seq.*—necessarily must have been practicing engineering under supervision of a licensed professional.[15] However, HSA does not identify her supervisor. More importantly, neither does the complaint, which in the context of a motion to dismiss supplies the assumed facts on which the motion is assessed. In any event, under HSA's view, CJ § 3–2C–02 applies even though a specific licensed professional was not named in the complaint. From that perspective, the relevant question in determining the applicability of CJ § 3–2C–02 would not be whether a licensed professional's acts or omissions gave rise to the complaint, but, rather, whether the services that were provided were professional services.[16]

In our view, HSA's argument is a bridge too far. The certificate requirement applies only if the complaint is based on negligence of a licensed professional. The statutory language plainly establishes the certificate requirement as a hurdle to litigating allegations of malpractice by a licensed professional. In particular, the claim must be against "the licensed professional" or that individual's employer and must be based upon "the licensed professional's negligent act or omission." There is simply no room in the definition to remove the "licensed professional" from the picture and still have a claim subject to the certificate requirement. Rather, the unambiguous language of the definition requires that a

---

    (v) investigation;
    (vi) planning; and
    (vii) design coordination
    (3) "Practice engineering" does not include the exclusive and sole
performance of nontechnical management activities.
BOP § 14–101(f).

**15.** Of course, the fact Ms. Mayo may have been legally permitted to "practice engineering" would not, however, have made her a "licensed professional" as defined by the statute. *See* CJ § 3–2C–01(c).

**16.** In ruling on the motion to dismiss, the Circuit Court apparently accepted this view, as did the Court of Special Appeals. 202 Md.App. at 266–71, 32 A.3d 155.

court must find that a plaintiff's allegations of negligence against an employer such as HSA are attributable to a "licensed professional" before the lawsuit may be dismissed for failure to file a certificate of qualified expert under CJ § 3–2C–02.

An examination of the legislative history of the definition of "claim" confirms the apparent meaning of the statutory language. When the statute was first enacted in 1998, it encompassed a claim against "a licensed professional" that was "based on the licensed professional's alleged negligent act or omission in rendering professional services, within the scope of the professional's license." CJ § 3–2C–01(b) (2002 Repl. Vol. & 2004 Supp.). In 2004 this Court construed that language and held that the certificate requirement applied only to an action against a licensed professional, but not to an action solely against a corporation through which architects—*i.e.,* licensed professionals—practiced. *Baltimore County v. RTKL Associates, Inc.,* 380 Md. 670, 689–90, 846 A.2d 433 (2004). Thus, regardless of whether the case concerned the provision of professional services through the corporation, the certificate requirement applied only as to a claim against an individual licensed professional. *Id.*[17]

The following year the Legislature responded to that decision by amending the definition of "claim" to extend the certificate requirement to actions against "the employee, partnership, or other entity through which the licensed professional performed professional services." *See* Chapter 125, Laws of Maryland 2005. That amendment also removed language indicating that the individual licensed professional would necessarily be a party in the lawsuit.[18] Nonetheless, the Legislature's use of the definite article—"*the* licensed professional" as

---

17. The Court noted that, although the statutes regulating architectural and engineering services permitted the corporate practice of those professions under certain circumstances, only individuals could hold licenses. 380 Md. at 690, 846 A.2d 433.

18. The statute originally required that the certificate "[c]ontain a statement from a qualified expert attesting that the licensed professional

opposed to "*a* licensed professional"—makes clear that the certificate requirement remains keyed to alleged malpractice by at least one specific licensed professional, even if the individual's employer rather than the licensee is the defendant.

It is thus indisputable that the certificate requirement is triggered only when a complaint alleges professional malpractice by one or more individual licensees. This is in contrast to the certificate requirement pertaining to malpractice actions against health care providers, in which "health care provider" is defined to include not only licensed individuals, but also individuals "authorized to provide one or more health care services." CJ § 3–2A–01(f).

Does this mean that one can file a complaint alleging "professional negligence," ask the factfinder to hold the defendant to the higher standard of care expected of professionals, but evade the gatekeeper function of the certificate requirement by keeping the allegations vague and not naming the individuals responsible? The answer is "no." Ultimately, a plaintiff who seeks to hold a defendant to the standard of care expected of a licensed professional will have to assign responsibility for the failure to meet that standard. Delay in doing so risks missing the 90–day deadline for filing the certificate.

A defendant who wishes to put a plaintiff to the test may have to do so by way of a motion for summary judgment rather than a motion to dismiss.[19] Such a motion would simply explain how the services alleged in the complaint fit

---

*against whom the claim is filed* failed to meet an applicable standard of professional care." CJ § 3–2C–02(a)(2)(i) (2002 Repl. Vol. and 2004 Supp.) (emphasis added). The 2005 amendment removed the phrase "against whom the claim is filed."

**19.** In a footnote in its reply memorandum in the Circuit Court, HSA suggested that the court could consider information outside the complaint and dispose of its motion to dismiss by granting summary judgment. While a motion to dismiss may be treated as a motion for summary judgment in certain circumstances, there was a significant question raised by Heavenly Days whether it had a "reasonable opportunity to present all material made pertinent" to such a motion. *See*

within the scope of the particular license and identify the licensed professional responsible for performing or supervising those services.

*Negligent acts or omissions in rendering services within the scope of the license*

■ The certificate requirement does not apply to every action that might be brought against a licensed professional or the licensed professional's employer.[20] It pertains only to actions alleging "negligent act[s] or omission[s] in rendering professional services within the scope of the professional's license...." The certificate requirement is triggered only when the complaint raises the issue of whether that licensed

---

Maryland Rule 2–322(c). HSA's belated suggestion in this case was contested by Heavenly Days at the hearing. In any event, the Circuit Court treated it as a motion to dismiss and, even if it had treated the motion as one for summary judgment, the undisputed facts did not relate the alleged negligence to a licensed professional.

In a related argument, HSA contends that Heavenly Days should have availed itself of a discovery mechanism in the certificate statute to identify a licensed professional in the firm. *See* CJ § 3–2C–02(b). That provision reads:

(b)(1) Upon written request made by the claimant *within 30 days of the date of the claim is served,* the defendant shall produce documentary evidence that would otherwise be discoverable, if the documentary evidence is reasonably necessary in order to obtain a certificate of a qualified expert.

(2) The time for filing a certificate of a qualified expert shall begin on the date on which the defendant's production of the documentary evidence under paragraph (1) of this subsection is completed.

CJ § 3–2C–02(b)(1)–(2) (emphasis added). It is evident that this provision applies only *after* a "claim" has been filed for the purpose of providing the claimant's expert with documentary material the expert reasonably needs to provide the desired opinion.

**20.** Heavenly Days briefly argues that the certificate requirement should not apply to the count of its complaint entitled "breach of contract," as opposed to the count entitled "professional negligence." The definition of "claim" in CJ § 3–2C–01(b), however, does not depend on the nature of the cause of action. It is the substance of the allegations, as opposed to the label attached to them, that triggers the certificate requirement. *Cf. Brown v. Rabbitt,* 300 Md. 171, 175, 476 A.2d 1167 (1984) (critical question in applicability of Health Care Malpractice Claims Act is nature of claim, not whether it is labeled tort or contract). Here both counts are based on the same allegations of negligent acts or omissions in the provision of services by HSA.

professional deviated from the standard of care for the profession. *Cf. Cannon v. McKen,* 296 Md. 27, 36, 459 A.2d 196 (1983) (Health Care Malpractice Claims Act did not apply when complaint did not allege breach of professional standard of care). That is why the expert who provides the certificate must be "knowledgeable in the accepted standard of care in the same discipline" and must provide in the certificate an opinion concerning compliance with the standard of care for the profession. CJ §§ 3–2C–01(d), 3–2C–02(a)(2)(i). The statute does not erect a special fence around licensed professionals that protects them from claims of ordinary negligence that might be made against any other individual. If the statute did so, its constitutionality would be questionable. *See Witte v. Azarian,* 369 Md. 518, 533–34 & n. 2, 801 A.2d 160 (2002).

It may be that the alleged deviation from the standard of care by a "licensed professional" is so obvious that it would be unnecessary to have expert testimony to prove it. *See Schultz v. Bank of America,* 413 Md. 15, 29, 990 A.2d 1078 (2010) ("sometimes the alleged negligence, if proven, would be so obviously shown that the trier of fact could recognize it without expert testimony"); *see also Crockett v. Crothers,* 264 Md. 222, 224, 285 A.2d 612 (1972). But that does not render the certificate statute inapplicable. Rather, it may be good cause for a court to modify or waive the certificate requirement pursuant to the statute. *See* CJ § 3–2C–02(c).

Heavenly Days characterizes its complaint as primarily based on Ms. Mayo's alleged misrepresentations and lack of diligence and not "any specialized knowledge of principles of engineering, landscape architecture, or land surveying" that would require expert testimony at trial. Because the allegedly negligent acts or omissions did not involve any specialized professional knowledge, Heavenly Days contends, the complaint is not based on negligence in the rendering of professional services within the scope of a professional license.

Heavenly Days' own complaint seems to say otherwise. The specific misrepresentations and lack of diligence alleged in the complaint were obviously related to HSA's professional

services on behalf of the crematory project. The second count of the complaint is labeled "Professional Negligence." In that count, Heavenly Days asserts that HSA owed it "a duty to exercise reasonable care under the circumstances in the provision of its professional services[.]" and that Heavenly Days reasonably relied on HSA's "expertise in the provision of its professional services[.]" The complaint appears to allege that a professional standard of care was breached.

In its ruling on the motion to dismiss, the Circuit Court held that the certificate requirement had been triggered because "we are not talking about ordinary negligence but professional negligence and they relied on Defendant's expertise in the provision of his professional services[.]" However, because the statute requires that the *licensed professional's* negligence occur in the rendering of professional services within the scope of his or her license, and no "licensed professional" was identified by the court as responsible for the alleged negligence, it was premature to dismiss the complaint. If, on remand, a "licensed professional" is identified as responsible for the alleged negligent acts or omissions or the supervision of those actions, within the scope of that individual's license, the Circuit Court should dismiss the case without prejudice, as directed by the statute.

If the court finds that a certificate was required, the question of its authority to waive or modify the certificate requirement—or to grant an extension of time to file one—may be revisited. Because those questions may arise and the parties have briefed their respective positions, we address them briefly.[21]

*The Circuit Court's Discretion to Waive or Modify the Certificate Requirement*

A court may waive or modify the certificate requirement "[u]pon written request by the claimant and a finding of good cause by the court." CJ § 3–2C–02(c)(1). In its response to HSA's motion to dismiss in the Circuit Court, Heavenly Days

---

21. Like the Court of Special Appeals, we express no opinion on the sufficiency of the certificate that Heavenly Days belatedly filed.

sought a modification—an extension—of the 90–day period for filing a certificate, but not a waiver or modification of the certificate requirement itself. The Circuit Court found no good cause to grant that request.[22] On appeal, the Court of Special Appeals affirmed that decision and also held that, regardless of whether there was good cause for a waiver or modification, the Circuit Court had no discretion to grant the request because such a request must be made before the time to file the certificate has expired.[23]

We agree with the intermediate appellate court in this regard. Although CJ § 3–2C–02(c)(1) does not explicitly set a time period in which a written request to waive or modify the certificate requirement be made, paragraph (c)(2) states: "The time for filing the certificate of merit of a qualified expert *shall be suspended* until the court rules on the request and, absent an order to the contrary, the certificate shall be filed within 90 days of the court's ruling" (emphasis added). For this provision to be operative, the time for filing the certificate cannot have expired when the request for waiver or modification is made; otherwise, there would be no time period for the request to suspend. The structure of CJ § 3–2C–02(c) thus indicates that a motion to waive or modify the certificate requirement is to be filed within the time period for filing the certificate.[24] Once such a motion is filed, there is an automatic extension of the time for filing the certificate.

---

**22.** Heavenly Days argues that this was an abuse of discretion, because it could not have known that CJ § 3–2C–02 would apply in its case, and the running of the statute of limitations means that Heavenly Days is highly prejudiced by the dismissal of its lawsuit. In response, HSA contends that it is "implausible" that Heavenly Days did not believe that CJ § 3–2C–02 applied to its complaint, implying instead that Heavenly Days was simply unaware of the statutory requirement and is now attempting to excuse its non-compliance with *"post hoc* rationalizations."

**23.** Heavenly Days' written request for waiver or modification of the certificate requirement was made more than five months after the filing of the initial complaint.

**24.** It is conceivable that a motion for waiver or modification of the certificate requirement could be filed more than 90 days after the filing

The legislative history confirms the apparent meaning of the statutory language. In the analogous statute requiring expert certificates in malpractice actions against health care providers, an extension of the time to file an expert certificate is automatically granted when the statute of limitations has expired and the delay was not willful or a result of gross negligence. *See* CJ § 3–2A–04(b). The original version of the bill that created the certificate requirement applicable to licensed engineers would have provided for a 90–day extension of the deadline unless the court found that the plaintiff's delay was willful or the result of the gross negligence. *See* first reader, House Bill 188 (1998). That provision was eliminated from the bill as enacted. The Legislature's decision not to include such an allowance in CJ § 3–2C–02 reasonably gives rise to the inference that, under that statute, "the grace period should not be extended to parties who fail to timely file the requisite certificate." *Heritage Harbour LLC v. John J. Reynolds, Inc.,* 143 Md.App. 698, 708–10 n. 4, 795 A.2d 806 (2002).

## Conclusion

In sum, because the First Amended Complaint does not allege negligent acts or omissions by a licensed professional engineer within the scope of the engineer's license, it is not subject to dismissal for failure to comply with the certificate requirement of CJ 3–2C–02. It may be that, upon further development of the facts by the parties, the relationship between the alleged negligence and a licensed engineer will be made manifest. In that event, because the time to seek modification or waiver of the certificate requirement expired long ago, the court may humanely consign this complaint to its final resting place on a motion for summary judgment.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTION TO REMAND IT TO THE

---

of a complaint. In particular, the 90–day period would have been tolled under CJ § 3–2C–02(b) if a plaintiff requested for documentary discovery prior to filing the motion for waiver or modification.

CIRCUIT COURT FOR FREDERICK COUNTY FOR FURTHER PROCEED-
INGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND
THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.