*Richard and Daphne Ceccone v. Carroll Home Services, LLC*
No. 85, September Term 2016


**Limitations – Contracts – Shortening Statute of Limitations by Contract**. With certain exceptions specified by the General Assembly, the statutory period of limitations for tort and contract claims in Maryland is three years. Maryland Code, Courts & Judicial Proceedings, §5-101. A provision of a contract that purports to shorten this period of limitations will be enforced in Maryland only if (1) there is no controlling statute to the contrary; (2) the provision is not the result of fraud, duress, misrepresentation, or the like; and (3) the provision is reasonable. In assessing the reasonableness of such a provision, the court should make an explicit determination whether the provision is reasonable, considering a variety of factors, including the subject matter of the agreement, the degree to which the provision shortens the applicable period of limitations, the relative bargaining position of the parties, and whether the shortened period of limitations is one-sided or applies equally to the parties to the agreement.

Circuit Court for Anne Arundel County
Case No. C-02-CV-16-001190
Argument: June 1, 2017

IN THE COURT OF APPEALS
OF MARYLAND

No. 85

September Term 2016

_____

RICHARD AND DAPHNE CECCONE

V.

CARROLL HOMES SERVICES, LLC

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Opinion by McDonald, J.

_____

Filed: July 28, 2017

In the court system, a potential plaintiff has an interest in having sufficient time to investigate and assert a claim. A potential defendant has an interest in repose and finality as to whether it will be necessary to mount a defense. The public has an interest in the efficient use of public resources – what, in this context, is sometimes called judicial economy. The Legislature, as the primary policy-making branch of government, weighs those competing interests and establishes statutory limitations periods for bringing claims in court.

Maryland law, nevertheless, allows parties, in some circumstances, to further restrict access to the courts by shortening limitations periods by contract. When will the courts recognize such clauses as superseding the legislative policy determination as to an appropriate period of limitations? Given the wide variety of contracts, the creativity of lawyers in devising contract clauses, and the disparity in bargaining power that sometimes exists, there is no simple answer.

This case concerns the standard "General Terms and Conditions" of a residential furnace maintenance agreement offered by Respondent Carroll Home Services, LLC ("CHS").[1] One of those terms reduced the period for a consumer to bring a tort or contract claim against CHS from the statutory three years to one year, although it did not limit the time period for CHS to make a claim against a consumer. Petitioners Richard and Daphne

---

[1] The Respondent has identified itself in its filings in this Court as "Petroleum Heat and Power d/b/a Carroll Home Services."

Ceccone, who had entered into a maintenance agreement with CHS, asserted tort and contract claims against CHS for damage to their residence that they attributed to the company. They filed their complaint well before the expiration of three years, but arguably more than a year after their claims accrued. The Circuit Court for Anne Arundel County dismissed their complaint on the basis of the shortened limitations provision in the agreement.

We adopt the approach previously articulated by the Court of Special Appeals and hold that contractually-shortened limitations periods, like the one at issue here, are valid only if (1) there is no statute to the contrary; (2) the provision is not the result of fraud, duress, misrepresentation, or the like; and (3) the provision is reasonable in light of all pertinent circumstances. Because the Circuit Court did not consider potential contract defenses or make an explicit finding on reasonableness, we remand the case to that court so that it may decide how those factors affect the validity of the limitations-shortening provision in the first instance.

## I

## Background

### A.    *Facts*

*The Maintenance Agreement*

At the time of the events underlying this case, the Ceccones heated their home in Anne Arundel County by means of an oil-fueled furnace.[2] They entered into a maintenance

---

[2] This case reaches us as the result of the grant of a motion to dismiss the complaint. Accordingly, we assume the truth of the facts set forth in the complaint and its attached

2

agreement for that furnace with CHS. CHS offered the maintenance agreement – titled "Carroll Home Services Ultra Oil Plan" – to customers to whom it supplied oil.

Under the maintenance agreement, CHS agreed to provide 24-hour-a-day service for no-heat emergencies, to repair specified boiler parts if they became defective due to normal wear and tear, and to conduct a yearly "tune-up" of the heating system. The customer agreed to properly vent the heating system, to maintain clean air filters, and to replace batteries as needed, among other things.[3]

The "General Terms and Conditions" of the agreement appear in 18 numbered paragraphs on the back of the pre-printed form that comprises the agreement. Among the items set forth in those paragraphs are the duration of the agreement, procedures for cancellation, conditions for coverage under the agreement, exclusions from coverage, disclaimers of warranties, notices of costs a customer will incur for late payment or non-payment, and limitations of CHS's liability, among other things. Pertinent to this case, Paragraphs 9 and 10 provide as follows[4]:

---

exhibits. *See RRC Northeast, LLC v. BAA Maryland, Inc.*, 413 Md. 638, 643 (2010). In any event, there does not appear to be any dispute concerning the terms of the maintenance agreement, which is the operative legal document pertaining to the issue before us.

[3] The record does not disclose how much the Ceccones paid CHS for the agreement, but the pre-printed terms indicate that a customer would "receive an invoice ... with [the] Agreement," which must be paid "in full upon receipt" or be subject to late fees and collection costs.

[4] The agreement defines the pronouns "we," "us," "our," and "ours" to refer to the Seller – *i.e.*, CHS. The pronouns "you," "your," and "yours" are defined to refer to the Buyer – *i.e.*, the Ceccones. It is perhaps also notable that the quoted paragraphs, as well

3

9.  IRREGULAR PAYMENT AND DELAY IN ENFORCEMENT – We can accept late payments, partial payments or payments marked "payment in full" without losing any of our rights under this Agreement.  *We can also delay enforcing any of our rights under this Agreement without losing any of our rights under this Agreement.*

10.  LIMITS OF LIABILITY – We will not be responsible for loss or damages due to or resulting from:  changes in oil consumption; improper operation of an attic fan or alternate fuel device; your failure to schedule service and or tune-ups; acts of God; terrorism; strikes; riots; material or labor shortages; fire; flood; hurricane; power interruption or loss; accidents; governmental acts; abuse or misuse of equipment; spontaneous part failure; insufficient water; frozen or jelled oil lines; or any other conditions beyond our reasonable control, including a vacant, unattended or unoccupied premises (in this Agreement, the term "vacant or unattended premises" shall mean premises at which no adult occupant is present for at least twenty-four (24) consecutive hours).  TO THE MAXIMUM EXTENT PERMITTED BY LAW, we will have no liability for direct or indirect, special or consequential damages of any kind.  We are not responsible for secondary damage as a result of a delay in rendering service.  To the extent any warranty exists, our liability for any warranty claim will be limited, as permitted by law, to the repair or replacement of defective parts or service provided under this Agreement.  *Any and all actions, whether based in contract or tort, whether for personal injury or property damage, and whether brought by Buyer or Buyer's insurance company, must be commenced within one year of the cause of action or shall be barred as a matter of law.*  IN NO EVENT SHALL OUR LIABILITY TO YOU OR OTHERS UNDER THIS AGREEMENT OR OTHERWISE EXCEED $1,000, INCLUDING ANY LIABIILTY UNDER SECTION 11.

(capitalized emphasis in original; italicized emphasis added).  As is evident, Paragraph 10 provides that any actions brought by the Buyer – *i.e.*, the Ceccones – including tort or contract claims must be brought within one year of accrual of the cause of action.  This provision was apparently intended to shorten the three-year period of limitations that would

as the other terms and conditions, appear in a considerably smaller font than they do in this opinion.

otherwise apply to such claims pursuant to Maryland Code, Courts & Judicial Proceedings Article ("CJ"), §5-101. There is no corresponding provision that shortens the period of limitations for CHS or that requires it to bring a claim within one year. Rather, Paragraph 9 purported to permit CHS to delay enforcing its rights under the agreement "without losing any of [its] rights under the agreement."

*An Incident with the Furnace*

During April 2014, there was an incident involving the Ceccones' furnace that caused some damage to their home. For purposes of this opinion, the details of that incident and the damages are not important. It suffices to say that the Ceccones suspected that faulty maintenance by CHS was responsible. According to the Ceccones, they consulted with an engineer and insurance adjuster, as well as another furnace maintenance company, all of which confirmed their belief that CHS was at fault. After conducting that investigation, they asked CHS to pay the cost of remedying the damage. Some negotiations ensued during 2015, but the parties ultimately did not agree on a resolution.

**B.    Legal Proceedings**

*Proceedings in the District Court*

On December 24, 2015, the Ceccones filed a *pro se* small claims action in the District Court of Maryland sitting in Anne Arundel County. *See* CJ §4-405; Maryland Rule 3-701. The Ceccones sought damages in the amount of $3,694.39, as well as costs. The complaint alleged that CHS had improperly maintained their heating system, and that this improper maintenance was both fraudulent and a breach of the parties' contract. CHS filed a Notice of Intend to Defend on January 19, 2016. On January 29, 2016, the Ceccones

5

filed an amended complaint that added documentation concerning the requested damages and increased the amount requested by about $70. The amended complaint also added an allegation that CHS had not complied with certain licensing requirements.[5]

On March 17, 2016, the District Court dismissed the case, apparently on the basis of the shortened limitations period set forth in the maintenance agreement, and entered judgment in favor of CHS. The Ceccones then pursued a *de novo* appeal in the Circuit Court for Anne Arundel County. *See* CJ §12-401(f) (providing for *de novo* appeal in a circuit court when the amount in controversy does not exceed $5,000); Maryland Rule 7-102.

*Proceedings in the Circuit Court*

The Circuit Court conducted a brief hearing on the matter on July 8, 2016. At the outset, counsel for CHS noted that CHS denied liability, but advised the court that he wished to raise a limitations defense as a "preliminary matter." He directed the court's attention to the limitations-shortening provision in the maintenance agreement and asserted

---

[5] In that regard, the Ceccones asserted that CHS did not employ a heating, ventilation, air-conditioning, and refrigeration ("HVAC-R") master technician as required by law, that CHS had falsely represented that it *did* properly employ an HVAC-R technician at the time the parties entered into the contract, and that this allegedly false representation was fraudulent. Although not entirely clear from the complaint, it appears that the Ceccones asserted that the alleged fraud was both (1) an independent tort and therefore a basis of recovery and (2) a basis on which to rescind the contract.

that the Ceccones were "on notice" of a potential claim as of October 2014,[6] more than a year before they filed suit in December 2015.

The Circuit Court then turned to Mr. Ceccone, who argued that the shortened limitations period should not be enforced and proceeded to relate some of the reasons why the Ceccones believed that CHS had made misrepresentations that affected the enforceability of the contract. After hearing briefly from counsel for CHS concerning some of those allegations, the Circuit Court engaged in the following discussion with Mr. Ceccone concerning whether the shortened limitations provision should supersede the statutory three-year period for tort and contract claims:

> THE COURT: Well, sir, I don't think I can get around the language of the contract. The contract is very clear that the action must be filed within one year. And that's clear. You contracted that way and that's part of the contract.
>
> MR. CECCONE: But I entered into the contract, Your Honor, as a result of believing that they were properly licensed.
>
> THE COURT: Well, you – but you may have some action with the – whoever regulates that company, bringing it to their attention. But so far as the Court is concerned you entered into a contract. You know what a contract is because you're in the real estate business. The terms are very clear. It says it must be filed within one year regardless of all of the background.
>
> MR. CECCONE: Well, Your Honor, I discovered on January of this year that, in fact, they did not provide – they were not properly insured to perform that work.

---

[6] It is not entirely clear from the record why CHS believed that the claim accrued in October 2014. In its filings and argument in this Court, CHS appears to argue that any claim accrued in April 2014.

THE COURT:      Well, and maybe that's something you can take up with the regulatory agency. But that's not anything I can do – handle. I'm only here on the contract. The contract is clear that you must file the action within one year.

                And so I have no other –

MR. CECCONE:    But the statute of limitations is three years. That's the statutory –

THE COURT:      That's the general. But you can contract it out. You can contract and make it six months, three – 30 days.

MR. CECCONE:    But who's –

THE COURT:      That's between you and [CHS].

MR. CECCONE:    Yeah. But would a reasonable person determine that that's a reasonable amount of one year?

THE COURT:      Well, I've seen it before.

MR. CECCONE:    Well, that's – I understand that's the case. You've seen it before. But what's basically happened is, is the contractor is setting an arbitrary amount of time for someone –

THE COURT:      Well, you could have, when you entered into the contract, said, look, I'm not going to agree to one year. It's got to be three years. You could have said that and then put that in the agreement. But you know what a contract is being in the real estate business. Whatever it's contracted for, you're stuck with.

After further discussion with Mr. Ceccone about whether the allegedly false representations by CHS could be a basis for rescinding the contract, including the one-year limitations period, the Circuit Court rendered judgment in favor of CHS based on limitations.

8

After judgment was entered in CHS's favor, the Ceccones appealed to the Court of Special Appeals. Because any further appellate review in this case properly belongs in this Court,[7] the Court of Special Appeals transferred the appeal to this Court pursuant to Maryland Rule 8-132. We treated the Notice of Appeal as a petition for a writ of *certiorari*, which we granted.

## II

## Discussion

There is a single issue presented for our review:[8] In dismissing the complaint, did the Circuit Court properly determine that the shortened one-year period of limitations set forth in the maintenance agreement superseded the three-year statutory period of limitations?

### A.    *Standard of Review*

When deciding whether to grant a motion to dismiss a complaint as a matter of law, a trial court is to assume the truth of factual allegations made in the complaint and draw all reasonable inferences from those allegations in favor of the plaintiff. When an appellate court reviews a trial court's grant of a motion to dismiss, the appellate court applies the same standard to assess whether the trial court's decision was legally correct. *Heavenly*

---

[7] CJ §12-305.

[8] The Ceccones initially attempted to raise a number of other issues pertaining to the proceedings in the District Court and the Circuit Court, but have properly focused their brief in this Court on the basis of the Circuit Court's dismissal of their action. That is the issue that we address.

*Days Crematorium, LLC v. Harris, Smariga and Associates, Inc.*, 433 Md. 558, 568 (2013). Because this review concerns resolution of a question of law, an appellate court does not accord any special deference to the trial court.

**B.      *Enforcement of Contractual Limitations Clauses***

Statutes of limitations are designed to balance the competing interests of plaintiffs, defendants, and the public.  A statutory period of limitations represents a policy judgment by the Legislature that serves the interest of a plaintiff in having adequate time to investigate a cause of action and file suit, the interest of a defendant in having certainty that there will not be a need to respond to a potential claim that has been unreasonably delayed, and the general interest of society in judicial economy.  *Pennwalt Corp. v. Nasios*, 314 Md. 433, 437-38 (1988); *Pierce v. Johns-Manville Sales Corp.*, 296 Md. 656, 665 (1983).  In enacting the three-year statute of limitations that governs most tort and contract actions, the General Assembly thus made a policy decision as to an appropriate deadline for the filing of such a claim by a reasonably diligent plaintiff.  *See* CJ §5-101.[9]

---

[9] With respect to some specific types of claims, the General Assembly has made a different policy decision and determined that a longer or shorter period of limitations is more appropriate.  *See, e.g.,* CJ §5-102 (12-year period of limitations for suits on "specialties"); CJ §5-105 (one-year period of limitations for assault, libel, and slander actions); CJ §5-109 (establishing limitations period for medical malpractice actions of either five years or three years after discovery, whichever is earlier); Maryland Code, Commercial Law Article, §2-725 (establishing four-year period of limitations for sales contracts, but allowing parties to reduce the limitations period to one year by agreement); Maryland Code, Corporations & Associations Article, §11-703(f)(2) (one-year period of limitations for certain securities actions).

This is not to say that a period of limitations is immutable. Statutes of limitation are not ordinarily jurisdictional, and parties may essentially lengthen them by waiving limitations[10] or by agreeing to toll the period of limitations for a particular claim that might otherwise become barred.[11] Similarly, parties may, in some circumstances, agree to shorten the period of limitations in a way that the courts will recognize.

States have taken different approaches as to whether, and the extent to which, parties to a contract may agree in advance to shorten a statutory limitations period. Among the states that prohibit such provisions, some have enacted laws containing such a prohibition,[12] while others have imposed that prohibition judicially on the basis of public policy.[13] In other states, courts appear to allow for contractually-shortened limitations periods, absent a defense to contract formation.[14] Many courts have assessed such

---

[10] *Kim v. Comptroller of Treasury*, 350 Md. 527, 536 (1998).

[11] *Milton Co. v. Council of Unit Owners of Bentley Place Condominium,* 354 Md. 264, 274-76 (1999).

[12] *See, e.g.*, Code of Alabama, §6-2-15 (holding such agreements "void"); Florida Statutes §95.03 (same); *cf.* Texas Statutes, Civil Practice and Remedies Code, §16.070 (same, unless the contract "relat[es] to the sale or purchase of a business entity" where there is an exchange of consideration and the contract is worth at least $500,000).

[13] *Dunlop Tire & Rubber Corp. v. Ryan*, 108 N.W.2d 84 (Neb. 1961) (holding such agreements void as "against public policy").

[14] *Rory v. Continental Ins. Co.*, 703 N.W.2d 23, 31 (Mich. 2005) ("[A]n unambiguous contractual provision providing for a shortened period of limitations is to be enforced as written . . . A mere judicial assessment of 'reasonableness' is an invalid basis upon which to refuse to enforce contractual provisions.")

11

provisions according to a criterion of reasonableness.[15]  In any event, it seems safe to say that "where a limitations period is imposed by a contract rather than by a statute, the public policy considerations that typically weigh in favor of strict enforcement of the limitations period do not apply."[16]

Maryland law has combined these approaches.  There are some provisions in the Maryland Code that explicitly bar any effort to shorten a statute of limitations.  *See, e.g.,* Maryland Code, Insurance Article ("IN"), §12-104 (provision in insurance or surety contract that purports to shorten period of limitations is "against State public policy, illegal, and void");[17] *see also St. Paul Travelers v. Millstone*, 412 Md. 424 (2010) (applying IN §12-104 to hold a contractually-shortened limitations period void).  Otherwise, the validity of a contractual provision that purports to shorten a statutory limitations period is measured by its reasonableness and by whether certain defenses to contract formation can be

---

[15] *See, e.g.*, *Order of United Commercial Travelers of America v. Wolfe*, 331 U.S. 586, 608 (1947) ("in the absence of a controlling statute to the contrary, a provision in a contract may validly limit . . . the time for bringing an action . . . to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period"); *Nuhome Investments, LLC v. Weller*, 81 Pd.3d 940, 947 (Wy. 2003) (contractually-shortened limitations periods "are prima facie valid and will be enforced absent a demonstration by the party opposing enforcement that the clause is unreasonable . . .");

[16] *Gallegos v. Mount Sinai Medical Center*, 210 F.3d 803, 810 (7th Cir. 2000).

[17] IN §12-104 was enacted in reaction to a decision of this Court enforcing a provision in an automobile insurance contract shortening the period of limitations.  *See Amalgamated Cas. Ins. Co. v. Helms*, 239 Md. 529, 540 (1965); Chapter 487, Laws of Maryland 1966; *see also Harvey v. Northern Ins. Co. of New York*, 153 Md. App. 436 (2003) (holding that IN §12-104 did not apply to a marine insurance policy).

established. The Court of Special Appeals aptly summarized the Maryland approach: "[P]arties may agree to a provision that modifies the limitations result that would otherwise pertain provided (1) there is no controlling statute to the contrary, (2) it is reasonable, and (3) it is not subject to other defenses such as fraud, duress, or misrepresentation." *College of Notre Dame of Maryland, Inc. v. Morabito Consultants, Inc.*, 132 Md. App. 158, 174 (2000).

The requirement of a showing of reasonableness is consistent with this Court's general approach to contractual provisions that purport to override otherwise governing law. In particular, in assessing provisions concerning liquidated damages,[18] forum selection,[19] and choice of law,[20] this Court has held that the validity of the particular provision turned on its reasonableness. Among the factors to be considered in assessing reasonableness are the subject matter of the contract, the duration of the shortened limitations period compared to the period that would otherwise govern,[21] the relative

---

[18] *Barrie School v. Patch*, 401 Md. 497 (2007) (liquidated damages clauses upheld if the stipulated amount is a "reasonable forecast of just compensation").

[19] *Gilman v. Wheat, First Securities, Inc.*, 345 Md. 361, 378 (1997) (forum selection clauses would be upheld unless "enforcement would be unreasonable").

[20] *National Glass, Inc. v. J.C. Penney Properties, Inc.*, 336 Md. 606, 610 (1994) (choice-of-law provisions upheld unless, among other things, "there is no ... reasonable basis for the parties' choice") (citing Restatement (Second) Conflict of Laws §187(2) (1971)).

[21] *See, e.g., Henning Nelson Const. Co. v. Fireman's Fund American Life Ins. Co.*, 383 N.W.2d 645, 651 (Minn. 1986) (holding that a one year contractual limitations period was "unreasonably short"). *But see, e.g., Capitol Fixture & Supply Co. v. National Fire Ins. Co. of Hartford*, 279 P.2d 435, 437 (Colo.1955) (holding that a one year contractual limitations period was "not unreasonable").

bargaining power of the parties to the contract,[22] and whether the shortened limitations period is a one-sided provision that applies to one party but not the other.

This Court has recognized that the principle of freedom of contract "serves the public interest in having individuals exercise broad powers to structure their own affairs by making legally enforceable promises." *Maryland-National Capital Park and Planning Commission v. Washington Nat. Arena*, 282 Md. 588, 606 (1978). On the other hand, the Court has also noted that the principle loses force and its public policy foundation when a contractual provision that purports to supersede existing law is exacted as a result of superior bargaining power. *Id*. at 612 ("In such cases, a court might well elect to refuse implementation"); *cf. Wolf v. Ford*, 335 Md. 525, 531-32 (1994) (exculpatory clauses upheld unless, among other things, there is an "obvious disadvantage in bargaining power" between the parties or if they appear in "transactions affecting the public interest"); *Walther v. Sovereign Bank*, 386 Md. 412, 426 (2005) (arbitration clauses upheld unless unconscionable). Indeed, it is notable that many of the cases upholding shortened limitations periods involve sophisticated contracts between parties with roughly similar bargaining power. *See, e.g., College of Notre Dame of Maryland, Inc. v. Morabito*

---

[22] *Compare International Business Machines Corp. v. Catamore Enterprises, Inc.*, 548 F.2d 1065, 1073 (5th Cir. 1976) (upholding contractually-shortened limitations period contained in a "facially comprehensive written agreement[] between sophisticated corporate entities") *with Long v. Holland America Line Westours, Inc.*, 26 P.3d 430, 435 (Alaska 2001) (refusing to enforce a contractually-shortened limitations period because, *inter alia*, one party "possessed disproportionate bargaining power in setting the terms of the tour contract"); *McKee v. AT&T Corp.*, 191 P.2d 845, 859 (Wash. 2008) (refusing to enforce such contractually shortened limitations provision "when imposed on a consumer in a contract of adhesion for a basic consumer service").

14

*Consultants, Inc.*, 132 Md. App. 158, 174 (2000) (construction contract between college and contractor); *Harbor Court Associates v. Leo A. Daly Co.*, 179 F.3d 147 (4th Cir. 1999) (contract between developer and architectural firm described as "sophisticated business actors").[23]

### C. *Application to this Case*

In this case we must assess whether the Circuit Court considered the relevant criteria to decide whether to enforce the provision in Paragraph 10 of the General Terms and Conditions that purported to shorten the statute of limitations for the Ceccones to file a tort or contract claim. As outlined by the Court of Special Appeals in *Morabito*, the relevant questions are:

(1) Is there a controlling statute to the contrary?

(2) Is the provision subject to defenses such as fraud, duress, or misrepresentation?

(3) Is the provision reasonable?

In this case, no statute has been cited to us – or to the Circuit Court – that, like IN §12-104, would categorically bar a home services maintenance agreement from including a provision that shortens the period of limitations. Nor are we aware of one.

---

[23] An amicus brief filed by the Public Justice Center argues that such a provision in a "contract of adhesion" – essentially a "take it or leave it" contract provided to a consumer without the opportunity to negotiate a modification -– should not be enforced. While this suggestion has some force, it is important for a court to focus on the underlying issues – *e.g.,* inequality of bargaining power, one-sidedness of a provision – as opposed to the label that might be attached to the contract.

With respect to the second question, the Ceccones have not asserted duress. They have alleged, however, that CHS made misrepresentations that they felt were material and that amounted to fraud and complained about an alleged failure of CHS to respond to discovery on the subject. No evidence was taken on the issue. It appears from the record in this case that the Circuit Court did not evaluate those allegations in assessing the limitations provision in the contract.

Nor did the Circuit Court assess the reasonableness of the limitations shortening provision. Instead, the court initially stated that Ceccones were bound by the one-year period in the agreement "regardless of all of the background" – *i.e.*, the particular circumstances of the case that Mr. Ceccone had been attempting to recite. When Mr. Ceccone pointed to the three year statutory period of limitations, the court opined that the three-year period in CJ §5-101 is "general" and that parties may "contract it out . . . and make it six months, 30 days." When Mr. Ceccone raised the issue of reasonableness of shortening the limitations period to one year in this context, the Circuit Court responded only that it had "seen it before" and did not consider the reasonableness of the provision in relation to the agreement before it.[24]

---

[24] Before us, CHS argues that the court "implicitly" found the provision to be reasonable. However, it is difficult to credit this argument when the court explicitly declined to analyze the reasonableness of the provision when that issue was raised by Mr. Ceccone and stated that it believed that the Ceccones were, in its words, "stuck with" whatever shortened limitation period was set forth in the pre-printed form, even if the period had been as brief as 30 days. It does not appear that the court believed that it had discretion to evaluate the reasonableness of that provision.

On remand, the Circuit Court should consider whatever evidence that the Ceccones may produce concerning misrepresentation and fraud by CHS and determine whether it undermines the validity of the shortened limitations period in the agreement.[25] The Circuit Court should also explicitly determine whether the shortened limitations period is reasonable. In doing so, the court should consider the totality of the circumstances, including, for example, the length of the shortened limitations period (here, 1 year), its relation to the statutory period (one-third), the relative bargaining power of the parties,[26] the subject matter of the contract (an agreement to service an oil-based home heating system), whether the shortened limitations period applies only to claims brought by one of the parties or runs in both directions,[27] and other facets of the limitations provision – *e.g.*, it appears to apply equally to claims of negligence and intentional torts.

---

[25] We express no opinion on the merits of those allegations.

[26] In this regard, the Ceccones have claimed that the parent company of CHS controls a number of the providers of these services in Anne Arundel County, suggesting that this allows CHS to impose one-sided terms. The Circuit Court did not accept any evidence on this allegation – or any other issue related to the limitations period – and we cannot assess it on appellate review.

[27] As noted earlier, Paragraph 10 of the General Terms and Conditions of the maintenance agreement purports to shorten the period of time for a buyer like the Ceccones (or their insurer) to bring a contract or tort action against CHS, but does not restrict the time for CHS to file suit, while Paragraph 9 of the agreement purports to excuse CHS from delay in enforcing its rights. In this regard the General Terms and Conditions are forgiving as to CHS in that any delay in enforcement is excused while it is unforgiving with respect to the Ceccones even where they attributed the filing of their claim beyond one year to their effort to investigate and satisfy themselves that CHS was actually responsible for the damage to their home.

17

## III

## Conclusion

We hold that a contractual provision that purports to shorten the statutorily-prescribed time for bringing a civil action is enforceable only if: (1) there is no statute to the contrary; (2) the provision is not the product of fraud, duress, misrepresentation, or the like; and (3) the provision is reasonable in light of all the circumstances. In this case, the trial court must assess, in the first instance, whether the criteria for enforcement of the provision are met and, in particular, whether the provision is reasonable.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY VACATED AND CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY RESPONDENT.**